## ANNIE RABY, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, November 7, 1911.

1. **RAILROADS: Negligence: Action for Death of Pedestrian: Last Chance Doctrine: Sufficiency of Evidence.** In an action for the death of a person who was struck and killed by a railroad train while he was walking in the center of the track at a point where the operatives should have anticipated the presence of persons, evidence that the engineer could have seen decedent when the train was seven hundred feet from him; that the train, just before and at the time it struck him, was traveling at thirty to thirty-five miles an hour; that it could have been stopped within three hundred and thirty feet, if traveling at thirty miles an hour, and within four hundred and fifty feet, if traveling at thirty-five miles an hour; that the alarm was not sounded until it was too late for decedent to get off the track, and that no attempt was made to apply the brakes until he was struck, was sufficient to take the case to the jury under the last chance doctrine.

2. **TRIAL PRACTICE: Appellate Practice: Conflict in Testimony: Credibility of Witnesses.** Contradictions and weaknesses in the testimony, developed on cross-examination of the witnesses, merely affect the value of the testimony, and it is the province of the jury to make such valuation, as well as to settle all conflicts in the testimony.

3. **RAILROADS: Negligence: Stopping Train: Evidence.** Evidence that a train was running thirty to thirty-five miles an hour when it struck a pedestrian, and that its speed was not slackened from the time it left a curve seven hundred feet away, is sufficient to serve as a basis for expert testimony as to the distance in which a train running thirty miles an hour could be stopped, accompanied by evidence as to the distance in which a train running thirty-five miles an hour could be stopped.

Appeal from Franklin Circuit Court.—*Hon. R. S. Ryors*, Judge.

AFFIRMED.

*Jeffries & Corum* for appellant.

(1) The demurrer offered by defendant should have been sustained. The cause was tried and submitted on the last clear chance theory and no evidence was offered to support the verdict based on that theory or on any theory. The humanitarian doctrine takes into account the existent situation. It does not embrace what might have been done under different circumstances. It seizes "the actual facts as they exist. . . . It assumes the actual rate of speed the train had." McGee v. Railroad, 214 Mo. 541; Brock v. Railroad, 125 Mo. App. 556. (2) The defendant is not liable under the humanitarian doctrine "if the speed of the train was such as to render it impossible for the engineer, by the exercise of ordinary care, to have stopped it in time, although the speed may have been negligent." Haley v. Railroad, 197 Mo. 25; Shipley v. Railroad, 144 Mo. App. 7; Laughlin v. Railroad, 144 Mo. App. 185. (3) "Where it is obvious that the motorman may not stop the car or avert the injury by the exercise of ordinary care to that end, the last clear chance or humanitarian doctrine does not obtain." Dey v. Railroad, 140 Mo. App. 469; Matz v. Railroad, 217 Mo. 298; King v. Railroad, 127 S. W. 405. (4) "It requires more than the showing of a mere possibility that the accident might have been avoided in order to bring a case within the humanitarian doctrine." Markowitz v. Railroad, 186 Mo. App. 359; Hawkins v. Railroad, 135 Mo. App. 527. (5) The court erred in permitting witness Smith to testify on behalf of the plaintiff as to the distance in which a train running at thirty miles an hour could be stopped. There was no evidence upon which to base the question.

*James Booth* and *O. E. Meyersieck,* for respondent, filed argument.

STATEMENT.—This is an action for damages for the negligent killing of plaintiff's husband, John Raby, the petition being predicated on the last clear chance doctrine. The plaintiff had judgment in the trial court and the defendant has appealed.

There are only two points made on this appeal— one as to the trial court's ruling admitting certain testimony in evidence; the other as to its refusal of defendant's demurrer to the evidence. The pleadings concede the plaintiff's right to bring this action as the widow of John Raby, and the defendant's corporate existence and liability to be sued; also that on January 7, 1910, John Raby, while walking on defendant's tracks near the city of Pacific, Missouri, was struck by one of defendant's trains and killed. It is also alleged in the petition, and conceded by the defendant, that, by reason of continuous use by the public as a footpath, the operatives of the defendant had reason to anticipate the presence of persons on the track, where Raby was killed, and therefore had a duty to keep a lookout for them and use ordinary care to avoid injuring them. The petition alleges that after the defendant's engineer running the train saw, or by the exercise of ordinary care could have seen, that her husband was in a position of imminent peril and danger and was unaware of it, he negligently failed, in time to avert injury to him, plaintiff's husband, to sound the usual danger signal, and to use the brakes and other appliances provided and at hand for stopping the train or putting it under control. The defendant's answer denied those allegations.

With the issues thus narrowed, was the evidence sufficient to make a case for the jury? It appeared therefrom that Mr. Raby was a night watchman for the defendant, but was off duty when he was killed.

He had been out hunting and was returning to his home in Pacific with his gun and a rabbit, walking westwardly along the footpath in the center of defendant's main track. It was broad daylight, being in the early afternoon of a winter day. While the tracks were dry, the space in between and the surface of the ground around was covered with sleet and snow. He was walking slowly along, looking down, evidently picking his way. Nearby, to his left, was the Frisco track on which a train was speeding by. Under these circumstances one of defendant's trains rushed swiftly up from behind, and killed him. The testimony adduced on behalf of the plaintiff tended to prove that the track behind Raby was level and straight for seven hundred and twenty feet and then slightly curved, and that defendant's engineer sitting at his proper place in the engine could have seen Raby for some seven hundred feet before the engine struck him, and that the train could have been stopped with the apparatus it had within three hundred and thirty feet, if running thirty miles an hour, and within four hundred and fifty feet, if running thirty-five miles an hour. The evidence further tends to prove that no alarm was sounded until it was too late for Raby to get off the track and that no attempt was made to put on the brakes until after he was struck, and that just before and at the time it struck him the train was going thirty to thirty-five miles an hour.

CAULFIELD, J. (after stating the facts).—I. We are of the opinion that the evidence was sufficient to take the case to the jury on the question whether the engineer used ordinary care and caution in avoiding injury to Raby, after he saw, or by the exercise of ordinary care could have seen, him on the track. It is true that defendant introduced evidence very positive in its character tending to prove that when the engineer first saw Raby the train was going faster

than plaintiff's witnesses said it was, and that after it became possible for the engineer to see Raby, it was impossible to stop the train in time to avoid injuring him, and that the engineer had blown the whistle before he could have seen him and then as soon as he could see him sounded the danger signal and threw on the emergency brakes. On cross-examination defendant also developed some contradictions and weaknesses in the testimony of plaintiff's witnesses. But all this did nothing more than create a conflict in the evidence and affect the value of the testimony. It was for the jury to settle such conflict and make such valuation. The demurrer to the testimony was properly overruled.

II. The defendant contends that the court erred in permitting an expert witness to testify on behalf of the plaintiff as to the distance in which a train running at thirty miles an hour could be stopped, asserting that there was no evidence upon which to base the question. It was just before leaving the curve that the engineer could first see Raby, at which point the testimony tends to prove the train necessarily ran somewhat slower than on a straight track. It was on the straight track that Raby was struck, some seven hundred feet after the engine left the curve. When it struck him, and just before that event, the evidence tends to prove it was running thirty to thirty-five miles an hour, and further tends to prove that its speed was not slackened or checked between the time the engine left the curve and the time it struck him. This tendency of the evidence was sufficient to serve as a basis for expert testimony as to the distance in which a train running at thirty miles an hour could be stopped, accompanied by evidence as to the distance in which a train running at thirty-five miles an hour could be stopped.

The judgment is affirmed. *Reynolds, P. J.,* and *Nortoni, J.,* concur.