(April 24, 1913.)

## FRANK E. DENBEIGH, Respondent, v. OREGON-WASHINGTON RAILROAD & NAVIGATION COMPANY, Appellant.

[132 Pac. 112.]

NEGLIGENCE—INSTRUCTIONS—APPLICABLE TO THE FACTS OF THE CASE— VERDICT—NOT DISTURBED—DAMAGES—EXCESSIVE.

1. In an action for damages based upon negligence, it is irrelevant to prove that the plaintiff or defendant has on similar occasions been careful or negligent, or that either party has the reputation of being careful or negligent.

2. "In determining the question of negligence and contributory negligence in this case, the jury should take into consideration the place at which the accident occurred, the nature of the surrounding country, the condition of the roadbed, the manner in which the train was being propelled, the character of the use of that railroad track, the probability of pedestrians being on the track at that time and place, if any, and from all of the facts and circumstances determine whether or not the servants of the defendant in charge of the train exercised ordinary care and prudence in the management and operation of the train at the time and place mentioned, and whether the plaintiff was guilty of contributory negligence under the instructions covering the same." The foregoing instruction is approved as stating the law applicable to the facts of this case, and did not prejudice the jury.

3. "Notwithstanding the fact that the plaintiff has been guilty of some negligence in exposing his person to an injury at the hand of the defendant, yet if the defendant discovered the exposed situation of the plaintiff in time by the exercise of ordinary or reason-

able care after so discovering it to have avoided injuring him and nevertheless failed to do so, the contributory negligence of the plaintiff does not bar a recovery of damages from the defendant. Where a person negligently walks upon a railroad track, if the engineer after noticing his exposed situation fails to give the proper signals or otherwise acts wilfully and recklessly, in consequence of which the person is killed or injured, the company shall be liable in damages." The foregoing instruction states the law applicable to the surrounding facts and circumstances of the present case as they are alleged in the pleadings and shown by the evidence.

4. Instruction No. 11 correctly states the law applicable to this case in express language, that if the jury finds from the evidence that after discovering plaintiff upon the track, the servants of the defendant did not sound alarm signals, either by whistle or the bell upon the engine, until it was too late for plaintiff to escape, such failure to so give the alarm signals was negligence.

5. While there is a conflict in the evidence as to the negligence of the appellant in not giving proper signals and exercising the diligence and care required under the circumstances after the signals had been given, after the engineer recognized that the respondent did not appreciate the signals given or the danger, yet there was testimony which raised an issue for the jury.

6. This court will not disturb the verdict of the jury on the ground that the weight of evidence is against the respondent, neither should the court ignore evidence because negative in character.

7. The general rule in this state is, that this court on appeal will not disturb the verdict of a jury, unless the amount is so large as to suggest passion, prejudice or corruption on the part of the jury.

8. The correct rule of law governing the estimation of damages where the issues and facts are as stated in the pleadings and evidence in this case is as follows: "In estimating the damages, however, you may take into consideration the extent of the plaintiff's injuries, if any were suffered by her, the physical and mental pain and suffering which she has endured, if any there be, which was the natural and proximate result of such injuries, and also the pain and suffering which it is reasonable to infer that she will suffer in the future as the natural and proximate result of such injuries."

APPEAL from the District Court of the First Judicial District for Shoshone County.  Hon. W. W. Woods, Judge.

Action to recover damages for personal injuries.  Judgment reduced and *affirmed.*

L. R. Hamblen and Featherstone & Fox, for Appellant.

In giving instruction No. 8 requested by plaintiff, the court gave an instruction applicable to a case involving the doctrine of the "Last Clear Chance." In the case at bar this doctrine does not apply. (*Neil v. Idaho & W. N. Ry. Co.,* 22 Ida. 74, 125 Pac. 331.)

The law contained in Instruction No. 11 has been sustained by this court in the Neil case *supra,* and in the case of *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91, and is the general rule in all cases of this kind. In refusing to give this instruction to the jury, the court was clearly in error.

The only theory upon which a recovery could be had, in view of the testimony in the case, was that it was the duty of the engineer to stop the train immediately upon seeing the man on the track ahead of him. (*Neil v. Idaho & Wash. Northern Ry. Co., supra.*)

John P. Gray, Therrett Towles and Frank M. McCarthy, for Respondent.

"When an act or omission of a defendant is proved, whether it is actionable negligence is to be determined by the character of the act or omission, and not by the defendant's character for care and caution." (*Hays v. Millar,* 77 Pa. 238, 18 Am. Rep. 445; *Montgomery & W. P. R. Co. v. Edmonds,* 41 Ala. 667; *Central R. & Banking Co. v. Roach,* 64 Ga. 635; *Chicago & A. R. Co. v. O'Brien,* 34 Ill. App. 155; *Dunham v. Rackliff,* 71 Me. 345; *Maguire v. Middlesex R. Co.,* 115 Mass. 239; *Boick v. Bissell,* 80 Mich. 260, 45 N. W. 55; *Miss. Cent. R. Co. v. Miller,* 40 Miss. 45; *Hayes v. St. Louis R. Co.,* 15 Mo. App. 584; *Higley v. Gilmer,* 3 Mont. 90, 35 Am. Rep. 450; *Bryant v. Central Vermont R. Co.,* 56 Vt. 710; *Christensen v. Union Trunk Line,* 6 Wash. 75, 32 Pac. 1018; *Young v. Crystal Ice Co.,* 83 Conn. 718, 76 Atl. 514; *Towle v. Pacific Imp. Co.,* 98 Cal. 342, 33 Pac. 207; *Spear v. United Railroads,* 16 Cal. App. 637, 117 Pac. 956; *Carr v. Stern,* 17 Cal. App. 397, 120 Pac. 39; *Harriman v. Pullman Palace-Car Co.,* 85 Fed. 353, 29 C. C. A. 194; Jones on Evidence, 2d ed., sec. 148; Greenleaf

on Evidence, 14th ed., sec. 54, p. 82; 1 Elliott on Evidence, sec. 187, p. 269.)

Instruction No. 6 was eminently fair. It is substantially the same as Instruction No. 10, approved by this court in the case of *Wheeler v. Oregon R. R. etc. Co.,* 16 Ida. 375-406, 102 Pac. 347. (See, also, *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513-525, 99 Pac. 91; *Grand Trunk R. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485.)

This same instruction, except as it was applicable to the particular facts of those cases, was approved also in both the case of *Walsh v. Winston Bros. Co.,* 18 Ida. 768, 111 Pac. 1090, and *Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080.

Instruction No. 8 involved the doctrine of the "Last Clear Chance," which has been approved by this court in *Pilmer v. Boise Traction Co., Ltd.,* 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254, and *Anderson v. Great Northern Ry. Co., supra.* (1 Thompson's Comm. on the Law of Negligence, sec. 238; *Kelley v. Ohio River R. Co.,* 58 W. Va. 216, 52 S. E. 520, 2 L. R. A., N. S., 898.)

Under the authority of the case of *Fleenor v. Oregon Short Line R. Co.,* 16 Ida. 781, 102 Pac. 897, this case was properly submitted to the jury.

The law is the same in the other jurisdictions. (*Kelley v. Ohio River Co.,* 58 W. Va. 216, 52 S. E. 520, 2 L. R. A., N. S.; 898; *Dutcher v. Wabash R. Co.,* 241 Mo. 137, 145 S. W. 63; *Raby v. Missouri Pac. Ry. Co.,* 160 Mo. App. 388, 140 S. W. 913; *Missouri K. & T. Ry. Co. of Texas v. Milburn* (Tex. Civ. App.), 142 S. W. 626; *International & G. N. R. Co. v. Woodward,* 26 Tex. Civ. App. 389, 63 S. W. 1051; *Ft. Worth & D. C. R. Co. v. Longino,* 54 Tex. Civ. App. 87, 118 S. W. 198; *Sanders v. Southern Ry.,* 90 S. C. 331, 73 S. E. 356.)   Denbeigh had the right to rely upon the railroad company performing its statutory duty to give signals for the public crossing just east of where he was standing. (*Chesapeake & O. R. R. Co. v. Young's Admr.,* 146 Ky. 317, 142 S. W. 709; *Cahill v. Railroad Co.,* 92 Ky. 345, 18 S. W. 2.)

Under the decision in *Walsh v. Winston Bros. Co.,* 18 Ida.

768, 111 Pac. 1090, the award here is absolutely reasonable, and in no sense excessive. There is nothing in the record to show or to indicate prejudice or passion. (*Lee v. Southern Pac. R. Co.*, 101 Cal. 121, 35 Pac. 572; *Coleman v. Southwick*, 9 Johns. (N. Y.) 45, 6 Am. Dec. 253; *Davis v. Holy Terror Min. Co.*, 20 S. D. 399, 107 N. W. 374; *Reeks v. Seattle Electric Co.*, 54 Wash. 609, 104 Pac. 126.)

The question was left to the sound sense and sober judgment of the jury, and this court may not interfere unless passion, prejudice or corruption has intervened or there is no evidence to support the verdict. (*Burch v. Southern Pac. Co.*, 32 Nev. 75, Ann. Cas. 1912B, 1166, 104 Pac. 229; *Solen v. Railway Co.*, 13 Nev. 106; *McLean v. City of Lewiston*, 8 Ida. 472, 69 Pac. 478; *Howland v. Oakland Con. Co.*, 110 Cal. 523, 42 Pac. 983; *Ryan v. Gilmer*, 2 Mont. 517, 25 Am. Rep. 744; *Horn v. Boise City Canal Co.*, 7 Ida. 645, 65 Pac. 145.)

The amount is not excessive, if we consider what the courts have allowed, and in the following cases courts have sustained verdicts as great or greater than this: *San Antonio etc. R. Co. v. Connell*, 27 Tex. Civ. App. 533, 66 S. W. 246; *Engler v. Western Union Tel. Co.*, 69 Fed. 185; *Western Union Tel. Co. v. Engler*, 75 Fed. 102, 21 C. C. A. 246; *Texarkana etc. R. Co. v. Toliver*, 37 Tex. Civ. App. 437, 84 S. W. 375; *The Fullerton*, 167 Fed. 1, 92 C. C. A. 463; *International & G. N. R. Co. v. Brice* (Tex. Civ. App.), 126 S. W. 613; *Jones v. New York Cent. etc. R. Co.*, 99 App. Div. 1, 90 N. Y. Supp. 422; *Chicago etc. R. Co. v. Dunn*, 106 Ill. App. 194; *Chicago etc. R. Co. v. Spurney*, 197 Ill. 471, 64 N. E 302; *Tully v. Steamship Co.*, 10 App. Div. 463, 42 N. Y. Supp. 29; *Illinois Central R. R. Co. v. O'Connier*, 90 Ill. App. 142; *Yazoo etc. R. Co. v. Scott*, 95 Miss. 43, 48 So. 239; *Gale v. New York Central R. Co.*, 13 Hun (N. Y.), 4; *Galveston etc. R. Co. v. Murphy*, 52 Tex. Civ. App. 420, 114 S. W. 443; *Rodney v. St. Louis S. W. R. Co.*, 127 Mo. 676, 28 S. W. 887, 30 S. W. 150; *Texas etc. R. Co. v. Parsons* (Tex. Civ. App.), 109 S. W. 240, 113 S. W. 914; *Texas etc. R. Co. v. Carr* (Tex. Civ. App.), 42 S. W. 126.

STEWART, J.—This is an action to recover damages sustained by plaintiff for personal injuries. The cause was tried to a jury and a verdict rendered in favor of respondent for the sum of $15,510. Judgment was rendered in accordance with the verdict. A motion for a new trial was made and overruled and this appeal is from the judgment and from the order overruling the motion for a new trial.

The facts are as follows: The appellant railroad company has for a number of years operated a railroad in the county of Shoshone, Idaho, from Wallace along what is known as Canyon creek to the town of Burke. Between the towns of Wallace and Burke are several small hamlets or villages. The canyon is very narrow and circuitous, and on the sides of said canyon are a number of producing mines where the residents of the hamlets and villages are engaged in employment. Along and through the canyon the appellant and also the Northern Pacific Railroad Company have lines of railroads, and such railroads and the creek take up a large part of the entire width of the canyon. The complaint alleges, and the answer admits, that the railroad of the appellant from Burke to Gem and between Burke and Mace, including the place where the respondent was injured, had been openly, constantly, habitually, notoriously and customarily used by large numbers of pedestrians and persons living along and going along the canyon during all seasons of the year and all hours of the day and night, as a foot-path and thoroughfare and roadway, along which the children went to school, people went to and from the postoffice and mercantile establishments and to and from their homes, and that the company knew of that use.

The respondent, Frank E. Denbeigh, a miner working in the Standard mine located on the hills running down to Canyon creek, on the morning of the 9th of October, 1911, left his boarding-house in the lower part of Burke to go to Mace postoffice, situated between the boarding-house and Wallace. He went upon the track of the appellant at a place where a road crosses the track and proceeded thence in the direction of Mace for a distance of from 100 to 150 feet, where

he met another miner by the name of Perry, and upon meeting Perry the respondent stopped upon the track and conversed with Perry for a few minutes, and while standing on the track during the conversation looked up the track in the direction of Burke and at that time there was no train in sight, and the approach of a train was not heard by the respondent.   The railroad track at the point where the conversation was had was steep and rises at a grade of approximately three and one-half or four per cent in the direction of Burke. From the time Denbeigh left Perry until he was struck by the train of the appellant coasting down from Burke by him, he describes his course and the conditions and what happened to him which resulted in the injury.   The respondent says: "There is a wagon road crossing that track near where we stood talking, somewheres near 100 feet and probably a little further, 125 feet it might be; I don't know exactly; anyway from 100 to 125 feet up toward Burke from where we stood on the track talking.   I walked down toward Mace after leaving Perry about 50 yards.   I had good hearing, or I considered I had.   I had had no defects in hearing or sight at that time.   At that time if there had been any sounds I would have heard them.   When I stood and talked to Perry I saw no train or heard no train.   I heard no whistle nor bell, nor did not hear any whistle or any bell until I heard that shrill whistle at me, and I turned my head and saw the fender right at me, and I jumped; that is the last I remember.   I jumped immediately upon hearing that whistle."   The respondent also testified that he was familiar with the fact that the railroad company observed the practice of blowing a whistle or ringing a bell up the canyon beyond the highway crossing, and that the train always blew for the bridges and the big curves and cuts, especially when anyone was on the track; that it was the custom of the train to whistle for that road crossing and for the bridge above.

The evidence of the respondent Denbeigh and Percy above referred to, that there was no signal either by whistle or bell until the danger signal was given immediately before Denbeigh was struck, was corroborated by seven other witnesses.

Some of these witnesses were persons who lived along the railroad and near by and within hearing distance of the passing trains, and some were passing over and along the railroad, and two of them were school children eleven and fourteen years of age, going to school, who were eye-witnesses of the accident.

The engineer who had charge of the train which caused the accident testifies: That he has been an engineer in the employ of the appellant for six years, and that for the last three years he had charge of a train, as engineer, running the train between Burke and Mace, and that he was in charge of the train on the morning of October 9, 1911; that he was running from Burke to Gem at the time of the accident; that the train consisted of five cars loaded with ore; that the cars were ahead of the engine and the engine was backing down the track; that he left Burke about 8:45 or 8:50. He says: "The road curves beyond the schoolhouse, and it curves on by the schoolhouse, and there is a straight piece of track from the bridge down to the road crossing, and curves from the road crossing around through the cut to Mace. As I came to the curve above the Mace schoolhouse on the morning of the accident I blew two long and two short blasts of the whistle, which is required by rule and law, and as I come on to this bridge some distance here, 400 feet from this public road crossing, I blew two long and two short blasts of the whistle, and shortly after I blew those whistles I seen a man walking down the track in this curve. It is nothing unusual to see a man walking down the track and I don't always stop when I see a man walking down the track. I seen that the man had not noticed the—apparently had not noticed the whistle I had blown for the crossing, so I blew another whistle in addition to warn him, which was two long and two short blasts of the whistle. At this time I was on the road crossing; still the man did not seem to pay any attention, and as I was coming along at the rate of ten miles an hour I was gaining on him rapidly. I blew another blast of the whistle and immediately gave the emergency application, which is a quick brake to stop in case that the man did not get off,

which he had time to get off if he had heeded the whistle, and at the same time I was whistling all that I possibly could all the time I was not busy at other things. Shortly after that Mr. Denbeigh went out of sight by me. I could not see right around the tank, it being square. He was possibly 30 feet out of sight before I struck him. I still had hopes that he would get out of the way, because the train being somewhat slacked and the noise we made. After he was struck the train stopped about a train's length, somewhere about 250 feet. I must have been about one hundred feet from him when I put on the emergency brake. What I mean by the emergency brake is a quick brake that is used in an emergency. It is everything that can be done in a case of danger. It applies all the brakes that are to be had and the power within the power of the engineer on the locomotive. I was above the crossing when I first saw Mr. Denbeigh on the track. When the train was stopped the rear end of the train was about 30 feet from Mr. Denbeigh. The bell was rung on the crossing. When I first saw Denbeigh on the track he was walking down the track slowly; had his working clothes on, and I was not alarmed at the man walking down the track.''

In the cross-examination of the engineer he says: That before he came to the road crossing he observed a man walking down the track apparently oblivious of the approach of the train, and that when he came upon the crossing and at the crossing he gave a signal with the engine whistle of two long and two short blasts; that the man continued in view and was still apparently oblivious and unconscious of the approach of the train, and about 150 feet from the crossing he gave the second blast; *that he kept observing the man during the interim between the first and second blasts and during that time the defendant was apparently unconscious and oblivious of the approaching train and during that time he rang the bell.* The bell continued to ring between the two blasts and before the man was struck he gave two long and two short blasts. There was about 50 feet between the time he gave the second blast to the point where he applied the emergency

brake. He also states he gave two long and two short blasts at the crossing and at point "B," and that there were several toots of the whistle, four or five, the same signal, two long and two short, and that he gave four or five more at the point "B" and gave four or five more just before he was struck. He says: "That would be about fourteen whistles I gave between the time I got onto that crossing and the time he was struck. *When I applied the emergency brake I was afraid we were going to run over the man and I turned the emergency on, to do all that I could to prevent running over him. He was still walking along in the same manner that he had been from the time I first observed him. I knew that by turning on the emergency brake that it might help some; that it might give him more chance to get away; that it would check the train in such a way that he would have time to get off the track, and I applied the emergency 100 feet before I struck him, and when I stopped the back end of the train was 30 feet below where he was; he had been dragged a little ways. The train ran approximately 400 feet from the time I applied the emergency until the train came to a standstill; going at that rate of speed at that place from my experience the train would go about 300 feet before I could bring it to a standstill.* I knew at the time when I saw Denbeigh on the track that the train could not be stopped in less than 300 feet, and I made no effort to stop the train until I came within 100 feet of him." He was asked this question: "How did it happen on this occasion, if you got within 300 feet after applying the emergency, that it went 400 feet before it stopped, if you applied it at that point?" Ans. "I don't know how to answer that."

The evidence of the engineer as to the signals given by him in the tooting of the whistle and the ringing of the bell was corroborated by the conductor, two brakemen upon the train and a section-man and two persons who were not in the employ of the company.

It will thus be seen that the evidence relating to whether the signals were given is directly contradictory. On all other facts put in issue by the pleadings and upon which evidence

was introduced there is no conflict, such evidence being substantially as stated in this opinion.

The first error assigned and urged for reversal is, that the court erred in excluding the testimony of a witness called on behalf of the defendant who was interrogated in regard to the reputation of the engineer Hinkle in charge of the train, with reference to his being known as a prudent and careful engineer. The court sustained the objection and the ruling of the court is assigned as error. There is no merit in this contention. The action was to recover damages sustained by the respondent by reason of negligence of the appellant. The law as to the admissibility of such evidence in cases of this character has been clearly announced by the authorities. Jones on Evidence (Ed. de Luxe), sec. 148, says: "We have already seen that in actions based on negligence it is irrelevant to prove that the plaintiff or the defendant has on similar occasions been careful or negligent; in like manner it is irrelevant to show that either party has hitherto had the reputation of being prudent or negligent."

There are many authorities sustaining the foregoing rule: *Spear v. United Railroads of San Francisco,* 16 Cal. App. 637, 117 Pac. 956; *Carr v. Stern,* 17 Cal. App. 397, 120 Pac. 35; *Harriman v. Pullman Palace-Car Co.,* 85 Fed. 353, 29 C. C. A. 194; Greenleaf on Evidence, vol. 1, 14th ed., sec. 54, p. 91; Elliot on Evidence, vol. 1, sec. 186, p. 186; *Towle v. Pacific Imp. Co.,* 98 Cal. 342, 33 Pac. 207.

Many other cases might be cited in support of this rule, but in the brief of counsel for appellant no authorities whatever are cited in support of the alleged error.

The second error presented is the giving of Instruction No. 6, requested by plaintiff, which is in part as follows:

"In determining the question of negligence and contributory negligence in this case, the jury should take into consideration the place at which the accident occurred, the nature of the surrounding country, the condition of the roadbed, the manner in which the train was being propelled, the character of the use of that railroad track, the probability of pedestrians being on the track at that time and place, if any, and

from all of the facts and circumstances determine whether or not the servants of the defendant in charge of the train exercised ordinary care and prudence in the management and operation of the train at the time and place mentioned, and whether the plaintiff was guilty of contributory negligence under the instructions covering the same.''

The argument against this instruction is, that it embraces matters not involved in the suit at bar, and that the effect of the instruction was misleading to the jury. The instruction given is practically and in substance the same as was approved by this court in the case of *Anderson v. Great Northern Railroad,* 15 Ida. 513, 99 Pac. 91. While in that case the trial court practically gave the same instruction as in this case, and no exception was taken to the instruction, however, the question arose upon an exception to the ruling of the trial court in refusing an instruction requested by the defendant, and in discussing the true rule the court disapproved the instruction requested and approved the instruction similar to the one now in controversy and given by the trial court. The same rule was approved in the following cases: *Wheeler v. Oregon & N. R. Co.,* 16 Ida. 375, 102 Pac. 347; *Walsh v. Winston Bros. Co.,* 18 Ida. 768, 111 Pac. 1090; *Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080.

Instruction No. 6, taken into consideration with the other instructions given in the case, is full and complete, and clearly within the issues in the case and the evidence, and states the law applicable to cases of the general character involved in this case, and relates particularly to the questions in issue and the different features of the controversy, and is not prejudicial to the interests of either the plaintiff or the defendant, and could in no way prejudice the jury.

Error is assigned to the giving of Instruction No. 8 requested by plaintiff. This instruction reads as follows:

''You are instructed that notwithstanding the fact that the plaintiff has been guilty of some negligence in exposing his person to an injury at the hand of the defendant, yet if the defendant discovered the exposed situation of the plaintiff in time by the exercise of ordinary or reasonable care after

so discovering it to have avoided injuring him and nevertheless failed to do so, the contributory negligence of the plaintiff does not bar a recovery of damages from the defendant. Where a person negligently walks upon a railroad track, if the engineer after noticing his exposed situation fails to give the proper signals or otherwise acts wilfully and recklessly, in consequence of which the person is killed or injured, the company shall be liable in damages.''

Counsel for appellant in discussing this exception calls attention to the case of *Neil v. Idaho & W. N. R. Co.*, 22 Ida. 74, 125 Pac. 331, and particularly this statement in that opinion: ''It is suggested by counsel that the doctrine of the 'last clear chance' is applicable to this case. We are not in accord with that suggestion, as it does not appear that the appellant presumed, or was bound to presume, that the respondent would not step off the track before the accident occurred, and when the engineer first realized that the respondent was in peril the evidence clearly shows that he stopped his train within eighty feet, which was as quickly as it could have been stopped.'' The facts as stated by the court in that case are not similar to the facts in the present case. In the present case it is alleged in the complaint that the point where the plaintiff was struck was in plain view of the engineer upon the engine of the defendant company for a distance of approximately 100 yards, and that the engineer upon the engine did see plaintiff in ample and sufficient time to warn him; and could see and did see that the plaintiff was going in the same direction that the train was going and was oblivious of the approach of the train, and that the engineer carelessly and negligently failed to sound the whistle or ring the bell or to give other notice; that after he saw the plaintiff the engineer neglected to warn him of the approach of said train until immediately before plaintiff was struck, and that by the exercise of ordinary care the engineer on said engine could have seen the plaintiff in ample time to have warned the plaintiff, and that the engineer negligently disregarded his duty to the plaintiff to warn the plaintiff by bell or whistle of the approach of the said engine, although

the engineer did so customarily act on said railroad track at the point of injury; and that had the engineer given warning at the time he could have seen the plaintiff upon the track, the plaintiff would have had ample time within which to have removed himself from the track and to have escaped injury.

In the Neil case it was admitted that the bell upon the engine rang up to and including the time that Neil was struck, and had been ringing for 500 feet, and that the train was laboring up a grade of one per cent. In this case it is denied by the respondent that any signal by whistle or bell was given until too late for him to escape.

In the case of *Pilmer v. Boise Traction Co.*, 14 Ida. 327, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254, this question was very generally discussed, and this court summarized the rule in the syllabus, paragraphs 7, 8, 9, 11, 12 and 13. While that case dealt with a case where the railroad company was crossing a street, and the person injured was traveling on the street crossing the railroad, yet the court dealt with the question of negligence on the part of the person and the proximate cause of the injury and how such questions should be determined, and also the duty and responsibility of both the railroad company and the person passing over the railway. In the 11th paragraph of the syllabus it is said: "A street-car should be kept under the reasonable control of the motorman when crossing a street, and persons with or without vehicles, passing over the track at street crossings, may assume that care will be used to reduce the speed at such crossings."

In the case of *Anderson v. Great Northern R. Co., supra,* the court gave certain instructions, and in analyzing such instructions this court said: " 'Precaution is a duty only so far as there is reason for apprehension,' and that the exercise of ordinary care to prevent injury arose only after the defendant 'became aware of the danger to which the child was exposed; or after they might have become aware thereof by the exercise of ordinary care;' . . . . The expression 'ordinary care' is a relative term rather than a fixed and unvarying one. What would be 'ordinary care' under one state of facts would

be gross negligence under other conditions; and so what would amount to the 'highest and utmost care' in one situation would only be 'ordinary care' in another, and therefore when the term 'ordinary care' is used we mean such care as is proportionate to the danger to be avoided or risk to be incurred, judged by the standard of common prudence and the surrounding facts and circumstances.'' This same rule applies to the surrounding facts and circumstances of the present case as they are alleged by the pleadings and shown by the evidence offered and received, in support of such issues.

The Anderson case quotes from the case of *Pilmer v. Boise Traction Company, supra,* and approves the following statement: ''Although the action of the one injured may have been the primary cause of the injury, yet an action for such injury may be maintained if it be shown that the defendant might, by the exercise of reasonable care and diligence, have avoided the consequence of the injured party's negligence.''

This court in the Anderson case, in discussing the Pilmer case, says: ''This was said with reference to the duties of a street-car company, but the principle is equally as applicable here. The railway company has no right to kill a person where it can avoid doing so, simply because he has committed an act of negligence in the first place. Where the negligence of the plaintiff precedes the negligence of the defendant, and the accident might have been prevented by the exercise of ordinary care on the part of defendant, notwithstanding plaintiff's negligence, then and in that case, the defendant is bound to exercise such care, and a failure to do so is actionable.'' The language used is clearly applicable to the facts in the present case and fully sustains the rule announced in Instruction No. 8. The authorities sustaining this position will be cited under the discussion hereafter of Instruction No. 11, as such authorities support the rule announced in Instructions 8 and 11, but are more particularly applicable to Instruction 11.

Objection is also taken to Instruction No. 11, which is in the following language: ''If you find from the evidence that after discovering the plaintiff upon the track, the servants

of the defendant did not sound alarm signals, either by whistle or the bell upon the engine until it was too late for the plaintiff to escape from the railroad track before being struck, then you should find the defendant guilty of negligence.''

The objection made to this instruction is that it imposes a duty upon the defendant to give alarm signals either by whistle or bell immediately upon discovering a person upon its track. The objection made does not come within the exception. The instruction in express language declares that if the jury finds from the evidence that *after discovering plaintiff upon the track* the servants of the defendant did not sound the alarm signals either by whistle or the bell upon the engine until it was too late for plaintiff to escape, such failure to so give the alarm signals was negligence. The rule announced in Instruction 11 is discussed and affirmed in the following cases: *Anderson v. Great Northern Ry. Co., supra; Fleenor v. Oregon Short Line R. Co.,* 16 Ida. 781, 102 Pac. 897; *Kelley v. Ohio R. Co.,* 58 W. Va. 216, 52 S. E. 520, 2 L. R. A., N. S., 898; *Dutcher v. Wabash R. Co.,* 241 Mo. 137, 145 S. W. 63; *Raby v. Missouri Pac. Ry. Co.,* 160 Mo. App. 388, 140 S. W. 913; *International & G. N. R. Co. v. Woodward,* 26 Tex. Civ. App. 389, 63 S. W. 1051; *Fort Worth & D. C. R. Co. v. Longino,* 54 Tex. Civ. App. 87, 118 S. W. 198; *Sanders v. Southern Ry.,* 90 S. C. 331, 73 S. E. 356.

The law seems to be well established in many states where statutes have not been enacted specifically providing differently, that trainmen in control of and operating railroad trains have the right to presume that adult persons walking upon the track for convenience can hear an approaching train and will heed all danger signals given and will get out of its way, and that such trainmen may rely upon that presumption until they are informed or have reasonable grounds to apprehend such person is ignorant of the train's approach, or that such person has not heard the signals given. The law is also well established that in many states where such conditions arise, the trainman or the engineer in charge and control of the train is bound to exercise due care to do what he can with the means at hand to avoid injuring such person,

and if he fails either to take proper steps to warn the person or to stop the train, if necessary, or fails to act with reasonable promptness, the railroad company is liable for the injury sustained, notwithstanding the person's contributory negligence, if such negligence of the company or trainmen was the proximate cause of the injury. Where a person is walking on a railroad track that is generally used by the inhabitants along the line of said railroad, and such usage is recognized and permitted by the railroad company, and such person is struck by a train following in the same direction that the person is walking, and where such person is in view of the engineer or trainman, and signals are given for the purpose of warning such person of the approaching train, and such person is oblivious of the approach of the train, and the acts of the person clearly indicate that the signals were not heard or recognized or appreciated by the person passing along the track in front of the train, and no attention is paid to such signals, and the trainman or engineer in charge of the train is apprised by his position and observations of such conditions and the danger of the person, as is shown by the evidence of the engineer himself in this case, such facts cannot excuse the company from exercising reasonable efforts to stop the train and prevent the injury: *Anderson v. Great Northern R. Co., supra;* Thompson's Commentary on the Law of Evidence, vol. 1, sec. 238; *Kelley v. Ohio River R. Co., supra; Fleenor v. Oregon Short Line, supra; Dutcher v. Wabash R. Co., supra; Raby v. Mo. Pac. R. Co., supra; Missouri K. & T. R. Co. v. Milburn* (Tex. Civ. App.), 142 S. W. 626; *International & G. N. R. Co. v. Woodward, supra.*

The next error is an exception to the giving of Instruction 20 with regard to contributory negligence of the plaintiff; this has been covered by the discussion of Instructions 8 and 11. The other instructions excepted to have been examined, and we find no merit in the objections made to the same, and when the instructions are all considered together, we are satisfied that the trial court correctly gave the law applicable to the facts in this case, and that there was no error of the

trial court either in giving instructions or refusing instructions requested by the appellant.

Under the assignment of error that the trial court erred in denying a motion for a new trial, the argument is directed to the sufficiency of the evidence. We have heretofore recited the evidence, partly in the language of witnesses and partly in substance. Referring now to the evidence, there are seven witnesses besides Perry who met the respondent on the track and who testify that there were no signals either by whistle or bell until the danger signal was given immediately before Denbeigh was struck; while there is testimony by the engineer that he did give a number of signals and blasts of the whistle and that the bell was rung on the crossing and at other points before the respondent was injured, and this was corroborated by the conductor, two brakemen upon the train and a section-man and two persons who were not in the employ of the company. We think there is substantial and sufficient evidence to sustain the verdict of the jury, except as to the amount allowed by the jury as damages.

While there is a conflict in the evidence as to the negligence of the appellant in not giving proper signals and exercising the diligence and care required under the circumstances after the signals had been given and after the engineer recognized that the respondent did not appreciate the signals given or the danger, yet there was testimony which raised an issue for the jury on the question of diligence and care in the time of giving the signals and controlling the train. Again, while the weight of evidence may be with the appellant upon this question and the evidence of the respondent is negative in character, yet there is evidence of a substantial character which the jury believed and acted upon. (Sec. 4824, Rev. Codes; *Herculith Co. v. Gustafson,* 22 Ida. 537, 126 Pac. 1050.) This court should not disturb the verdict of the jury on the ground that the weight of evidence is against the verdict, neither should the court ignore evidence because negative in character. (Jones on Evidence (Ed. de Luxe), sec. 848.)

Upon the question of damages, it appears that Denbeigh lost his right leg below the knee; that his right hand was broken so that the little finger of the right hand is of no use. His tongue was severely cut; his nose was broken; he suffered serious scalp wounds which have somewhat disfigured him. He had two ribs broken and was generally bruised and injured. He was in good health at the time of the injury; was a miner and woodsman, at the age of forty-six years and was drawing $4.50 per day. His expectancy of life under the mortuary rules recognized by courts was 23.81 years. He was unable to earn anything from the time of the accident up until a short time before the trial, except he had worked from the 9th of July, 1912 to the 19th of September, 1912, at $3 a day, and this was light work from an old employer for whom he had worked for years, and the work he secured from the Federal Company was not continuous and is limited.

It is urged that the judgment is excessive. We are aware of the many decisions by various courts where verdicts of juries have been reviewed, and the cases clearly show that the courts have recognized the particular facts of each case as the basis upon which the amount of the damages is determined as just and fair. The jury in arriving at their verdict in this case seems to have concluded that the medical nursing and expenses was $510, and such expenses were included in the verdict and made up the total sum of $15,510. The evidence shows that by reason of the injury the capacity of plaintiff was reduced to the extent of $1.50 per day, or the total sum of $547.50 per year. This respondent was forty-six years of age at the time of his injury and had an expectancy of 23.81 years, and if he retains his health and is able to earn the $3 a day which was paid him as shown by the evidence after the injury, during the period of his expectancy, he would have sustained damages by reason of the injury to the extent of $13,035.97. This is based entirely upon his ability to earn the $3 per day during the entire period of his expectancy. There is no probability whatever of his recovering so that he

could earn the $4.50 per day during the remaining years up to the end of the expectancy period.

Whether the jury in arriving at the sum of $15,000 fixed the actual loss at $1.50 a day for 365 days for a period of 23.81 years, aggregating $13,035.97, and also allowed damages for pain and suffering as alleged in the complaint, in the sum of $1,964.03, making the sum of $15,000, this court is unable to ascertain, either from the evidence or the verdict, or what measurement the jury adopted in arriving at their verdict. It is a recognized rule in this state that this court on appeal will not disturb the verdict unless the amount is so large as to suggest passion, prejudice or corruption on the part of the jury. (*McLean v. City of Lewiston*, 8 Ida. 472, 69 Pac. 478; *Horn v. Boise City Canal Co.*, 7 Ida. 640, 65 Pac. 145; *Howland v. Oakland Consol. R. Co.*, 110 Cal. 513, 42 Pac. 983; *Wall v. Livezay*, 6 Colo. 465; *Ryan v. Gilmer*, 2 Mont. 517, 25 Am. Rep. 744; *Solen v. Virginia etc.*, 13 Nev. 106; *Aldrich v. Palmer*, 24 Cal. 513; *Wheaton v. North Beach & M. R. Co.*, 36 Cal. 591; *Lee v. Southern Pac. R. Co.*, 101 Cal. 118, 35 Pac. 572; *Burch v. Southern Pac. Co.*, 32 Nev. 75, Ann. Cas. 1912B, 1166, 104 Pac. 225.) Other cases might be cited in support of this rule.

Referring again to the evidence, we do not think that the jury in this case were justified in allowing actual damages for every day in the year for the entire 23.81 years. A moment's thought will convince any thinking person that there is no probability at all that even an ordinarily healthy person will be able to earn his ordinary income every day during his life, and that circumstances and conditions will not arise or occur, which naturally happen in life, and not cause him to lose a single day. To accept such a rule would be unreasonable and unjust, and could only be the result of prejudice or misjudgment on the part of the jury. It follows tha 'it is impossible to determine the number of days that the per son would be able to earn his compensation, and in this case there is no evidence upon the subject.

The evidence also shows that the injury occurred on the 19th day of October, 1911; that the plaintiff returned to work

upon the 9th day of July, 1912, and worked from the latter date until the 19th of September, 1912 at $3.00 a day; that he lost his right leg below the knee; that his right hand was broken and the little finger of the right hand was useless; that his tongue was severely cut, his nose broken, and he sustained severe scalp wounds which somewhat disfigured him; that he had two ribs broken and was severely bruised. The respondent for a period of nine months was unable to work. These various injuries sustained by the respondent and the duration of his confinement would naturally create great pain and worry to the person injured, and an ordinary person would be under a great burden during recovery, and the measurement of the damages which should be allowed for such pain and suffering is a difficult problem. There is no rule fixed by statute or by the courts for the measurement of the damages sustained by a person under such circumstances; and the general rule which in our judgment should be recognized in such a case has been clearly and accurately stated by the supreme court of Oklahoma in the case of *Enid City Ry. Co. v. Reynolds* (Okl.), 126 Pac. 193, wherein the court approved an instruction to the jury, and held: "In estimating the damages, however, you may take into consideration the extent of the plaintiff's injuries, if any were suffered by her, the physical and mental pain and suffering which she has endured, if any there be, which was the natural and proximate result of such injuries, and also the pain and suffering which it is reasonable to infer that she will suffer in the future as the natural and proximate result of such injuries."

We think the rule as above stated is correct, and should be applied to the facts as alleged and proven in this case. The instruction, however, given in the above-mentioned case, does not in its entirety apply to the facts of this case, for in the present case the damages sought to be recovered in the action was, first, expenses for medical aid and nursing, $510, which was allowed by the jury; second, for actual injuries in the reduction of his power and capacity to perform the services and work to which he was accustomed, and pursue the course of life which he might otherwise have done;

third, for damages by reason of the physical and mental pain and suffering which he has endured, if there be any, which was the natural and proximate result of such injury, and also the pain and suffering in the future as the natural and proximate result of such injuries. With reference to such damages, however, the above rule, in our opinion, states the rule which should govern the jury and this court in determining the damages which should be awarded in this case. This court has discussed and determined, that in a personal injury suit, where the allegations and the evidence will support such verdict, both mental and physical suffering are elements of damages and are to be considered in actions of tort by the jury. (*Horn v. Boise City Canal Co.*, 7 Ida. 640, 65 Pac. 145; *McLean v. City of Lewiston*, 8 Ida. 472, 69 Pac. 478.)

Guided by this rule, we are clearly of the opinion in this case that the verdict of the jury is excessive, and that a fair and just judgment under the rule announced is, that there should be allowed in this case the aggregate sum of $11,510. The judgment, therefore, is reduced to the sum of $11,510. Costs awarded to respondent.

Ailshie, C. J., concurs.

SULLIVAN, J., Dissenting.—I cannot concur in the conclusion reached by my associates. The facts of this case are substantially as follows:

The appellant operates a railroad, approximately eight miles in length, from the town of Burke to the town of Wallace in the county of Shoshone. It is down a narrow, crooked canyon with a grade of about four per cent. The Northern Pacific Railway Co. also has a track running down said canyon. Along said line are situated several towns, to wit, Blackbear, Gem, Hunter, Mace and Burke. It was the custom or habit of many people in going from town to town up and down said gulch to walk on the railroad track. On the morning of October 9, 1911, about 9 o'clock, the respondent left his boarding-house and started down said track toward the Mace postoffice. At a point where the county road crosses

appellant's track, about 300 feet above the point where the accident occurred, the respondent entered appellant's right of way and proceeded down the canyon toward the Mace post-office, walking between the rails. About 150 feet below said wagon road crossing, he met a friend and they stopped and talked together for a few minutes, and then respondent proceeded down said track for about fifty yards when he was struck by the tender of the locomotive which was hauling a train of five loaded ore cars from Burke down the canyon to Wallace, each of which cars contained about fifty tons of ore. This train was a regular train operated by the appellant and passed said place every morning at approximately the hour of nine o'clock, which fact respondent knew. The respondent was in the possession of all of his faculties, his hearing was acute and his eyesight good and he was perfectly sober at the time the accident occurred. It appears from the evidence that after he had the conversation above referred to with his friend, he proceeded down the track about fifty yards, which would be about fifty paces of the ordinary man, and at the ordinary gait would require less than one minute, when he was struck by the train and so badly injured that he had to have his leg amputated about halfway between the foot and the knee.

Under the rules of the company and the law of the state, it was the duty of the appellant on approaching a highway crossing to give proper signals by whistle. The evidence of seven witnesses, five of them in the employ of the railroad company and two who were not, was that the signals were given. The conductor, the engineer, the fireman and two brakemen testified that the signals were given. One of the disinterested witnesses testified that on the morning of the accident he was going down said canyon to Mace to take the Northern Pacific train for Wallace. He heard a train whistle and thinking it was the Northern Pacific train, started to run down the track to catch it, and when he heard it whistle again, recognized the whistle as that of the appellant company's train. Thereupon he slackened his speed and glanced over toward the appellant's track and saw the respondent walk-

ing down the track. As the train that struck respondent came along, it whistled again and then the engineer commenced giving the warning whistles—short blasts—while the respondent continued to walk on the track until the train got pretty close to him, when he turned his head and glanced back at the train and then attempted to step off the track.

Another disinterested witness testified that he was standing in the door of the Mace schoolhouse and heard the train whistle before it crossed said country road, and then heard it whistle a number of times thereafter.

Eight witnesses, among whom were three or four school children and one or two women who were in houses along the track, and respondent's friend Perry, with whom he had the conversation just before the accident, and respondent himself testified that they heard no signals until the train was within a very few feet of the respondent, and then they heard some sharp, short whistles from the engine.

The seven witnesses who testified for the appellant gave positive evidence that they heard the whistles and signals given, while the eight witnesses who testified for the respondent (including the school children) testified that they did not hear any whistles until the train was very close to the respondent. This positive and direct testimony to the effect that the proper signals were given is overwhelmingly against the negative testimony of the witnesses who testified for the respondent to the effect that they *did not hear* the whistles. The grinding and squeaking of the brakes in holding the loaded train down said four per cent grade made a noise that could have been heard a hundred yards or more, and would have been heard by respondent had he been as vigilant as his dangerous position required him to be.

The engineer testified that he saw the respondent on the track and that he gave the signals; that the respondent apparently paid no attention to them and kept walking on the track; that the train was running at from eight to ten miles an hour with brakes on and making a noise. The record shows that a loaded train of that kind, coming down a four per cent grade, would require the brakes to be on to a certain extent

to keep the train from running away. The engineer, believing that the respondent would step off the track before the train reached him, proceeded to blow the whistle, and when he got within perhaps a hundred feet of respondent and he did not get off the track, he threw on the emergency brakes and gave in rapid succession the danger signal with a whistle. At that the respondent turned partly around with his face to the train and undertook to jump off the track just as the tender struck him. The evidence further shows that the train was stopped as quickly as possible after the emergency brakes were put on and that on returning to the respondent after the accident, he said to the engineer that he must have been dreaming. From the evidence in the record he certainly must have been dreaming, or was so absorbed in his own meditations that he was perfectly oblivious to his dangerous position and surroundings. Under the well-established rules of law when applied to that state of facts, the appellant was not guilty of negligence, and was not liable for the injuries sustained by respondent. In this case there was nothing whatever to place the engineer of said train upon his guard or lead him to conclude that the respondent would not step off the track when the train came near him. The train was running only at from eight to ten miles an hour, with brakes on to steady the train down the grade, and was making considerable noise. Although the engineer observed that the appellant paid no attention to his signals, that was not sufficient to indicate that the respondent was not in his right mind, or not possessed of his faculties or would not step off the track before the train reached him, as he was moving and apparently capable of taking care of himself. Under the facts the engineer had the right to assume that he would do so.

The evidence shows that at times when people were walking on said track they would remain on the track until the train would come very close to them, without apparently paying any attention to the train, and then would step off, and if the engineer made an attempt to stop the train, they would give him the laugh as he went by. This they would do with-

out giving the engineer any intimation of any kind as to whether or not they intended to get off the track before the train reached them. We believe that is the general experience of all engineers on roads where people are in the habit of walking on the track.

Under the great weight of authority, even if the engineer had seen respondent up to the time the engine got to within 100 feet of him, he had the right to assume that he would protect himself from injury by stepping off the track, and it was not negligence for the engineer to act upon that presumption. The evidence shows that the respondent was an intelligent man, possessed of good hearing and good eyesight, and had been traveling up and down that railroad track at that place for five years. And if a man so possessed of his faculties will place himself in a dangerous position, as the respondent did, and so forget the danger of his position as to go to "dreaming" and "meditating," the appellant company ought not to be held liable under the facts of this case. If a man wants to dream and meditate, he had better go to some safe place and not upon a railroad track at a time when he knows the train is about due to pass.

Many of the authorities cited in *Neil v. Idaho & W. N. Ry. Co.*, 22 Ida. 74, 125 Pac. 331, are in point on this proposition. *Norfolk & Western R. Co. v. Johnson*, 103 Va. 787, 50 S. E. 268, is cited in the Neil case, and in that decision the court said:

"In the case at bar there was nothing to put the engineer upon his guard. The preponderance of the evidence shows that the plaintiff's intestate was doing what was done daily at that point. The engineer was confronted with no unusual situation, and he was not negligent, under such circumstances, in treating the plaintiff's intestate as free from danger."

In *Campbell v. Kansas City etc. R. Co.*, 55 Kan. 536, 40 Pac. 997, the court said:

"It is contended that Campbell was seen 500 feet ahead of the engine, and therefore the engineer should have stopped the train before reaching him. An engineer, however, is not bound to stop a train whenever he sees a person ahead upon

the railroad, but has a right to assume that an adult person, apparently in the possession of his faculties, will exercise his senses, and step out of the way of danger before the engine reaches him. . . . . Campbell was a man of mature years, who had the use of his faculties; and, as he was moving and apparently capable of taking care of himself, the engineer had a right to presume until the last moment that he would leave the track and not be run over.''

In the majority opinion great reliance seems to be placed upon the decision of this court in *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91. That action was brought for causing the death of a four-year-old child who had wandered upon the railroad track. In that case the court held in effect that the conductor, if he had proper eyesight, would have distinguished that it was a small child and should have used greater care than if it had been a full grown man possessing his ordinary faculties. When an engineer sees a very small child on the track, he certainly should use greater care and caution than is required when he sees an adult on the track, and it is expressly stated therein that ''When an engineer sees an adult on the track ahead of him, he ordinarily has the right to presume that he will get off the track before the train reaches him.'' The facts in the Anderson case are in no manner like the facts in the case at bar.

If the courts of this state are going to follow the rule that an adult with mature faculties may go upon a railroad track, especially such a road as the one involved in this case, where there are curves every three or four hundred feet, or less, and use such track for the purpose of ''dreaming'' and ''meditation,'' and hold the company liable in case injury results, it will be carrying the rule of negligence to the very extreme. When an adult goes upon a railroad track to walk, greater care and vigilance is required of him than if he were walking on a sidewalk. It seems to me that if the rule established by the majority opinion is the rule to be observed in this state, the railroad company would become the insurer for any injuries to a trespasser, and unless such trespasser get off the track when the signals are sounded, before the train gets so

close to him that it cannot be stopped in time to avoid injury, the engineer must stop his train and send a person forward to remove the trespasser so that the train may proceed on its way.

The only reasonable rule is that when the engineer sees a person walking upon the track, apparently possessed of all his faculties, he has a right to presume that the person will leave the track before the train reaches him. The judgment ought to be reversed.

And again: Even if the appellant were negligent in this matter, the judgment is excessive, and ought to be reduced to $8,000.