340 P.2d 112

Rita B. LALLATIN and Anton Fred Lallatin, Elizabeth Jeannie Lallatin and Lynn B. Lallatin, Minors, by Rita B. Lallatin, their Guardian ad litem, Plaintiffs-Appellants,

v.

Jay W. TERRY and Dyke's Electric Co., a corporation, Defendants-Respondents.

No. 8712.

Supreme Court of Idaho.

June 5, 1959.

Gee & Hargraves, Pocatello, for appellants.

L. F. Racine, Jr., Pocatello, for respondent Dyke's Electric Co.

E. H. Casterlin and Hugh C. Maguire, Jr., Pocatello, for respondent Terry.

TAYLOR, Justice.

Plaintiffs (appellants) are the surviving widow and children of Anton H. Lallatin, deceased. At about 7:30 a. m. on January 31, 1957, the deceased was struck and killed by an automobile driven by the defendant (respondent) Jay W. Terry. The accident occurred on U. S. Highway 30 about eight miles west of Soda Springs. The deceased and witness Noble W. Hussey, as employees of the state highway department, were engaged in plowing snow from the highway. They were operating a truck with a sweep or blade attached at an angle to the front end thereof. Deceased was the driver. The truck was equipped on the rear with four tail lights, two reflectors, two clearance lights, and on top of the cab it bore a blue light which flashed both forward and to the rear. Being advised that snow was drifting onto the highway between Soda Springs and Bancroft, deceased and Hussey left Soda Springs in the truck at about 5:30 a. m. They had moved the snow as they drove both west and east, and part of it a second time in a westerly direction. They were returning toward the east when the blade in front of the truck collided with the rear of an automobile stalled in the snow in a cut. They had seen the red rear lights of the automobile, but thought the car was moving; their vision then becoming obscured by swirling snow they did not again see the lights of the car until they ran into it. Due either to the impact or an effort to back the truck away from the car, or both, the truck was stopped at an angle to the road, the front end facing somewhat north

of east and the rear to the south of west, so that the left end of the blade was upon or near the center line of the highway. Hussey attempted to open the door on the right, but being against the snow bank, that door could not be opened. They looked in both directions for approaching traffic; then deceased alighted from the truck on the left side and was followed by Hussey.

Deceased started to walk forward, intending to walk around the left end of the blade to the stalled car in front. He had taken a few steps in that direction when he observed the lights from Terry's car approaching from the west. The deceased turned, facing the lights, called Hussey's attention to them and, as Hussey put it, "I guess we was just sort of paralyzed, couldn't move, and there was a crash." Hussey estimated the time between alighting from the truck and observing the lights at about eight to fourteen seconds.

The Terry car struck deceased, who at that moment was standing on the highway a short distance out from the front end of the truck. The right front corner of the Terry automobile collided with the left front fender and bumper of the truck and the left end of the snow blade. The car came to rest crossways of the north traffic lane with its front end facing, and within two or three feet of, the blade of the snow plow.

The picture, plaintiffs' exhibit E, shows the relative positions of the car and truck after the collision. The L and H placed on the photograph by the witness Hussey indicate the points where Lallatin, deceased, and the witness stood at the time of the accident.

The highway in the area involved passes through rolling terrain by means of minor fills in the low areas, and minor cuts through the hill crests. The snow was drifting onto the highway in the cuts, but was swept off the road by the wind, and the road was bare in the spaces between. Terry had passed through several of these cuts before reaching the one where the accident occurred. He observed that a snow plow had been operating on the highway, but said he saw no vehicle or lights ahead of him. Just before entering the swirling snow in the cut where the truck was stalled he reduced his speed to the point where he observed or felt the overdrive go out of operation, which occurs in that particular car at 22 miles per hour, and he was still slowing down up to the time of the collision. Describing the sudden appearance of the truck, "It just seemed like I came out of a wall and there was a truck, the rear end of a truck, staring me in the face." "It was just like somebody raised a curtain and there it sat." Terry turned to the left in an attempt to go around the truck on that side. He did not apply his brakes, explaining, "I

was afraid I would lose control of the car, * * * I was afraid I would slide into the side of it." When his car had stopped Terry jumped out, ran to the front, and momentarily observed deceased's body lying on the highway in front of his car. He spoke to Hussey about halting traffic, and ran to the west to stop two cars which he knew were following him. Hussey went forward to stop traffic coming from the east, and to get some traveler to go to Soda Springs for an ambulance. The sheriff testified that as he approached the scene from the east, the snow was still swirling and that he did not see the flashing light on the truck until within 50 feet of it, and that from the information he gathered at the scene he calculated Terry's speed at 20 miles per hour.

Terry was taken to the Soda Springs hospital for observation, and released the next day. On admission to the hospital he was asked concerning his employment. The blank on the hospital admission record opposite the word, "Employer" was filled in, "Dyke's Pole & Elec. Co." (Plaintiffs' Exh. G.) Dyke's Pole Line Electric was an individual proprietorship business owned and operated by the witness Dykeman. The defendant (respondent) Dyke's Electric Co. is a corporation organized subsequently to the accident and is the successor of the Dyke's Pole Line Electric. Dyke's Pole Line Electric had a contract to make certain electrical changes

**244**

and installations at the plant of the Monsanto Chemical Company at Soda Springs. Defendant Terry was a journeyman electrician, residing in Pocatello, and a member of Local 449, of the International Brotherhood of Electrical Workers. Dyke's Pole Line Electric was a member of the Utah-Idaho chapter of the National Electrical Contractors' Association. The contract between the association and the union provided among other things that the contractors would employ electricians through the union on jobs such as that at Monsanto; the electrician employee was to receive, in addition to the hourly wage, $7 per day to cover the cost of subsistence or travel to and from the employee's residence. When a contractor desired the services of electricians, he requested the agent of the union to send the men wanted, out to the job. If the man or men sent out reported at the job and were acceptable to the contractor they were placed on the payroll and put to work. The contractor could reject any man, so reporting. In which case, he would not be employed. However, if the reporting workmen was qualified, the contractor was required to pay him for four hours work, and the agreed subsistence.

In response to a request from Dyke's Pole Line Electric, Terry had been asked and agreed to accept employment by Dyke's on the Monsanto job at Soda Springs. He had not been previously employed by Dyke's. He left Pocatello at about 6:00

a. m. on January 31st, the day of the accident, to report for work at the Monsanto plant at 8:00 a. m., driving his own car. His means of transportation was a matter wholly of his own choice. The would-be employer had no control or right of control thereof.

Dyke's had a foreman or superintendent and a number of employees on the job at Soda Springs. Terry never reported to the foreman for work on that job and was never placed on the payroll or employed by Dyke's, nor was he ever paid, and he never claimed, any wages or subsistence from Dyke's.

"(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment. * * *" § 219;

"(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control. * * *" § 220;

"A principal is not liable for physical harm caused by the negligent physical conduct of a non-servant agent during the performance of the principal's business, if he neither intended nor authorized the result nor the manner of performance, unless he was under a duty to have the act performed with

due care." § 250; Restatement of the Law of Agency, Second.

At the time of the accident, Terry was neither an agent, employee nor servant of Dyke's Pole Line Electric. Assuming that an obligation on the part of Dyke's arose out of his driving toward Soda Springs in an effort to report for work, the record is conclusive that Dyke's had no control or right of control of the means or manner of transportation. The use and operation of his automobile in that effort was entirely his choice, and under his complete control. He was not a person "employed by another person who is responsible for his conduct," within the wrongful death statute. I.C. § 5-311. The prospective employer was not liable for any negligence on the part of Terry in the operation of his car while driving toward the place of intended employment. I.C. § 44-1202, Joslin v. Idaho Times Publishing Co., 56 Idaho 242, 53 P.2d 323; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971; Bourus v. Hagen, 192 Wash. 588, 74 P.2d 205; Dickson v. Beemer, Mo., 217 S.W.2d 515; Khoury v. Edison Electric Illuminating Co., 265 Mass. 236, 164 N.E. 77, 60 A.L.R. 1159; Zarn v. Dominique, 39 Ohio App. 442, 177 N.E. 850; Gittelman v. Hoover Co., 337 Pa. 242, 10 A. 2d 411; Wilkie v. Stancil, 196 N.C. 794, 147 S.E. 296.

The action was brought against both Dyke's Electric and Terry. On trial the cause was submitted to the jury on the issues involving both the negligence of Terry and the liability of Dyke's Electric as his employer. The verdict was in favor of both defendants. Plaintiffs' appeal is from the judgment entered thereon.

The first assignment urges error in the refusal of the court to admit in evidence the admission record of the hospital at Soda Springs, which purports to show that Terry had told the admitting officer of the hospital that Dyke's Pole Line Electric was his employer. Terry testified that as far as he knew he was not employed until he reported on the job at Soda Springs, and that as he remembered it, he told the admitting officer at the hospital that he "was going to Monsanto to go to work for Dyke's Pole Line Electric." In urging the admission of the exhibit and in making an offer of proof based thereon, counsel for appellants advised the court that he was not offering the exhibit to establish the agency of Terry, but to contradict and impeach him as a witness. In their brief, appellants urge the admissibility of the exhibit on the theory that Terry's agency being otherwise proved on the trial, his declaration should have been received in corroboration of that fact, citing Hayward v. Yost, 72 Idaho 415, 242 P.2d 971. In that case the court said:

"* * * The declarations of an alleged agent made outside the presence

of the alleged principal are, of themselves, incompetent to prove agency, Cupples v. Stanfield, 35 Idaho 466, 207 P. 326, yet where the agency has been established by independent evidence, the declarations as corroborative evidence are admissible." 72 Idaho at page 429, 242 P.2d at page 979.

In this case there was no independent evidence of agency. Here the evidence shows only a prospective employment, and such that had Terry been actually so employed at the time of the collision, no liability would have attached to defendant Dyke's. Moreover, the exhibit under "Financial Arrangement" indicated the fact that Terry was insured, and the offer was not limited to the purported statement of employment. Curtis v. Ficken, 52 Idaho 426, 16 P.2d 977; Annotations, 56 A.L.R. 1418, 4 A.L.R.2d 761. The court's ruling was correct.

◼ In their second assignment, appellants complain of the submission to the jury of the issue of contributory negligence. They contend that contributory negligence was not pleaded and therefore was not an issue. The answers of the defendants allege that the sole proximate cause of the death of plaintiffs' decedent was his own negligence. Plaintiffs distinguish between "sole" negligence and "contributory" negligence and contend that these answers do not plead, but negative, contributory neg-

ligence. We cannot agree. A defendant in a negligence action is not required to confess negligence on his part in order to raise the issue of plaintiff's contributory negligence. Where a defendant contends that he was not negligent, and that the injury was proximately caused by the sole negligence of the plaintiff, he may so allege in his answer, and rely upon the law of contributory negligence in the event of evidence showing, or tending to show, negligence on his part. Hooker v. Schuler, 45 Idaho 83, 260 P. 1027; Kelly v. Troy Laundry Co., 46 Idaho 214, 267 P. 222; Graham v. Milsap, 77 Idaho 179, 290 P.2d 744; Edwards v. Laurel Branch Coal Co., 133 Va. 534, 114 S.E. 108. The law of contributory negligence was properly submitted to the jury.

◼ Plaintiffs also assign as error the failure of the court to give their requested instruction No. 8, on the presumption of due care on the part of deceased. We have held such an instruction proper in a death case, particularly where there are no eyewitnesses available to give an account of the occurrence of the injury. Geist v. Moore, 58 Idaho 149, 70 P.2d 403; Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Cole v. Ridings, 95 Cal.App.2d 136, 212 P.2d 597. In this case the witness Terry testified that prior to the collision he did not see either the deceased or the witness Hussey and did not know he had struck deceased until he saw his body lying upon the high-

way. Hussey gave complete details, as hereinbefore set out. While he testified that he did not actually see the car strike deceased, he did know, and indicated on one of the exhibits in evidence, the spot where deceased was standing when struck, and that deceased was looking west toward the approaching lights. Hussey may not have seen the impact, because he also looked toward the lights. However, what happened in that split second could have no appreciable effect on the issue of deceased's negligence. Vasquez v. Alameda, Cal.App., 308 P.2d 857, affirmed 49 Cal.2d 674, 321 P.2d 1. Thus, the details of the occurrence being available, through an eyewitness favorable to plaintiffs, the purpose of the presumption is served and the necessity for such an instruction is largely removed. In instruction No. 13 the court advised the jury that the "mere fact that an accident happened, considered alone, does not support an inference that some party, or any party, to this action was negligent. * * * There is no presumption of negligence to be drawn from the mere happening of an accident." We do not hold that an instruction on the presumption would have been erroneous in this case. We hold only that the refusal of the instruction under the circumstances presented was not error. Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Graham v. Milsap, 77 Idaho 179, 290 P.2d 744; Campbell v. City of Los Angeles, 28 Cal.App.2d 490, 82 P.2d 720; Speck v. Sarver, 20 Cal.2d 585, 128 P.2d 16; Cole v. Ridings, 95 Cal. App.2d 136, 212 P.2d 597; Brandelius v. City and County of San Francisco, 47 Cal. 2d 729, 306 P.2d 432.

■ Plaintiffs also complain of the refusal of their requested instruction No. 2.[1] This request was adequately covered by the court's instruction No. 11[2] taken from the statute, I.C. § 49-701.

1. "You are further instructed that it is the duty of the driver of an automobile to at all time exercise due care in his driving. This means, to have his car under control and on the proper part of the highway when attempting to pass other vehicles or persons and also to keep a reasonable lookout for other vehicles or persons that might lawfully be upon the highway."

2. "You are instructed that the laws of the State of Idaho further provide as follows:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicles, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

"The driver of every vehicle shall, consistent with the requirements of paragraph (a) (above) drive at an appropriate reduced speed when approaching a hill crest, when traveling upon any narrow roadway and when special hazards exist with respect to other traffic or by reason of weather or highway conditions."

Complaint is also made of refusal of the plaintiffs' requested instruction No. 22.[3] The authority cited for this request is I.C. § 49–735.[4] This section was a part of art. X, ch. 273, 1953 Sess.Laws, and has particular application to the rights and duties of pedestrians and drivers in areas where crosswalks are provided and where the presence of pedestrians might be anticipated by drivers of motor vehicles. While that chapter defines a pedestrian as "any person afoot", it is doubtful if the deceased was a pedestrian within its terms, particularly in view of § 92(b) [I.C. § 49–737(b)] requiring a pedestrian walking along and upon a highway to walk upon the left side or shoulder. The applicability of the request to the facts in this case is, therefore, questionable. In any event, so far as applicable, the request was covered by the court's instruction No. 11.

In the third assignment, objection is made to a portion of instruction No. 3, to-wit, "it must be shown that the defendant Terry negligently violated some duty which he owed to plaintiffs". It is urged that the duty owed by Terry was to "decedent", not to "plaintiffs". Serious objection could not be made to the use of either term. Technically the instruction is correct; the duty, upon the alleged violation of which the plaintiffs base this action, is a duty owed to "plaintiffs", to-wit, the duty to refrain from negligently injuring their husband, father, and provider. We do not think the jury could have been misled.

It is urged that instruction No. 4[5] is insufficient as a statement of Terry's duty. First it is urged that the jury should have been instructed that Terry was obliged to use greater diligence and caution in view

3. "You are instructed that the laws of Idaho provide that the driver of a vehicle shall exercise due care to avoid colliding with any pedestrian or person afoot upon any roadway and shall give warning by sounding the horn when necessary."

4. "Notwithstanding the foregoing provisions of this article, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway."

5. "Negligence may be defined to be the omission or want of ordinary care, and ordinary care is such care as an ordinarily prudent person would exercise under like circumstances. Negligence may consist in the failure to do that which an ordinarily prudent person would do under the circumstances, or the doing of that which an ordinarily prudent person would not do under the circumstances. The care to be exercised to be ordinary care must be proportioned to the danger reasonably to be apprehended under the circumstances. What might be ordinary care under certain circumstances would be negligence under other circumstances. The standard by which ordinary care is gauged is the question:

" 'What would an ordinarily prudent person have done under like circumstances?'

"If a person acted as an ordinarily prudent person would act under the same circumstances and conditions, there is no negligence. If a person failed to act as an ordinarily prudent person would have acted under the same or like circumstances and conditions, then there is negligence."

of the poor visibility existing at the place of the accident. We think the instruction sufficiently covers that point.

Appellants in their brief argue that "the reasonably prudent man" standard of conduct cannot be applied where the legislature has fixed a different standard. However, no conflicting legislative standard is called to our attention. The instruction complained of does not conflict with the legislative standard submitted to the jury in instruction No. 11.

 Plaintiffs assign error in the giving of instructions submitting to the jury the defense of unavoidable accident. Such instructions have been the subject of much discussion by appellate courts with varying and conflicting results. In Turner v. Purdum, 77 Idaho 130, at page 141, 289 P.2d 608, at page 613, we said:

"* * * It is not error for the trial court to instruct on the law of unavoidable accident where there is any evidence tending to support such theory such as the uncertain weather conditions prevalent at the time of the accident as pointed out in the given instruction."

In that case the appellant urged the instruction was improper because the accident resulted from known actions of known persons and things. California cases were cited in support of the rule in Turner v. Purdum. In this case appellants call our attention to the fact that those California decisions have, subsequent to our decision, been reversed or modified by the Supreme Court of California in Butigan v. Yellow Cab Company, Cal., 320 P.2d 500. In that case the court said:

"* * * The so-called defense of inevitable accident is nothing more than a denial by the defendant of negligence, or a contention that his negligence, if any, was not the proximate cause of the injury. * * * Since the ordinary instructions on negligence and proximate cause sufficiently show that the plaintiff must sustain his burden of proof on these issues in order to recover, the instruction on unavoidable accident serves no useful purpose." 320 P.2d at page 504.

The reasoning of the California court is quite impressive. However, we do not feel called upon to reconsider the rule of Turner v. Purdum in the case now before us, for the reason this case, like that one, presents a state of facts providing a basis for the instruction, even though debatable. We therefore hold that the giving of the instruction was not reversible error.

 The last assignment complains of the submission to the jury of the doctrine of the last clear chance—instruction No.

14.[6] This instruction is a paraphrasing of portions of §§ 479 and 480 of Restatement of the Law of Torts. It appears to be an attempt to apply the doctrine of the last clear chance to both parties. By its terms it refers only to a time after the primary negligence on the part of both deceased and Terry had occurred. Deceased had exposed himself on the center of the highway in weather such that approaching drivers could not see him in time to avoid injuring him, and such that he could not see an approaching vehicle in time to save himself. Terry had entered the swirling snow at 20 miles per hour when visibility and road conditions were such that he could not see an object ahead in time to avoid colliding with it. It was for the jury to determine whether these were acts of negligence under the circumstances, and which was the proximate cause, or contributing proximate cause, or whether both combined as the cause, of the death. In any event, the time had passed when either the deceased or Terry had a last clear chance to avoid the accident. Juries should not be asked or allowed to speculate upon possibilities of avoiding an injury under the circumstances which would be beyond human experience, and on the side of the miraculous. Courts

sometimes overlook the fact that the doctrine not only requires that the chance must be the "last" chance, but it must also be a "clear" chance. The instruction had no application to the facts in this case and should not have been given. McIntire v. Oregon Short Line R. Co., 56 Idaho 392, 55 P.2d 148; Ineas v. Union Pac. R. Co., 72 Idaho 390, 241 P.2d 1178; Graham v. Milsap, 77 Idaho 179, 290 P.2d 744; Rodabaugh v. Tekus, 39 Cal.2d 290, 246 P.2d 663; Menke v. Peterschmidt, 246 Iowa 722, 69 N.W.2d 65; Hatfield v. Sargent's Adm'x, 306 Ky. 782, 209 S.W.2d 306; Dean v. Century Motors, 81 U.S.App.D.C. 9, 154 F.2d 201.

However, the instruction was not prejudicial to plaintiffs. It preserved in them a right to recover, even though the deceased had been negligent, if the defendant thereafter had a last clear chance to avoid the collision. This is the reverse of the application made of the doctrine in Graham v. Milsap, supra. At most the instruction would tend only to confuse the jury. But nothing appears to indicate the jury was misled. Hence, the error does not warrant a reversal. I.C. § 5–907; Richardson v. Bohney, 26 Idaho 35, 140 P. 1106; Judy v. Reilly Atkinson & Co., Inc., 59 Idaho

6. "A plaintiff's decedent who, by the exercise of reasonable diligence could have observed the danger created by the defendant in time to have avoided harm therefrom, may recover if, and only if, the defendant (a) knew of the decedent's situation, and (b) realized or had reason to realize that the decedent was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the decedent."

752, 87 P.2d 451; Hooton v. City of Burley, 70 Idaho 369, 219 P.2d 651; Willes v. Palmer, 78 Idaho 104, 298 P.2d 972; Boyer v. Scripter, 278 App.Div. 601, 102 N.Y.S. 2d 2.

Judgment affirmed.

Costs to respondents.

SMITH, KNUDSON and McQUADE, JJ., and MARTIN, D. J., concur.

PORTER, C. J., not participating.