(No. 5902.   December 5, 1932.)

E. H. YORK, Appellant, v. EDWARD ALHO, Respondent.

[16 Pac. (2d) 980.]

Robert E. Brown and N. D. Wernette, for Appellant.

Cannon, McKevitt & Fraser and Robert M. Cummins, for Respondent.

GIVENS, J.—Appellant was driving his own automobile west from Wallace to Kellogg on the Yellowstone Trail, the paved portion being approximately 18 feet wide, with a graveled berm extending on each side about six feet, sloping gradually to the natural soil which was gravelly and frozen, it being about 75 feet from the pavement to the fence on the south side of the road, about 10 o'clock A. M., November 23, 1928, at a speed variously estimated at from

15 to 35 miles per hour. On a slight downgrade where the pavement was covered with ice and slippery from rain and sleet which had fallen the preceding evening, appellant's car skidded, swayed from side to side on the roadway, turned around, and thus out of control careened a distance of from 150 to 200 feet, where it collided with defendant's truck, heavily loaded with concentrates, traveling east, shoving appellant's automobile about 60 feet from the point of contact, demolishing it, and inflicting on him severe physical injuries.

Appellant's claim for damages is based on the contention that respondent's agent, who was driving the truck concededly on his master's business, was negligent in not slowing down, stopping the truck before the collision, or turning the truck to the right so as to avoid appellant's car.

At the conclusion of all the evidence, a motion for a directed verdict in favor of defendant was granted. From such verdict and judgment based thereon this appeal is taken.

Both parties are in agreement that a motion for a directed verdict should be denied unless there is no substantial evidence on any question of fact about which reasonable minds might differ, and the converse. Respondent contends that there was no evidence to support any charge of negligence as to the rate of speed of his truck, because being only 15 to 25 miles per hour, it was within the legal limit. However, while such speeds are within the legal limit, 35 miles per hour (subsec. 8, sec. 4, art. 2, chap. 260, p. 486, Sess. Laws 1927), the statute likewise provides that:

"Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater then is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person." (Sec. 4, art. 2, chap. 260, Sess. Laws 1927; *Brixey v. Craig*, 49 Ida. 319, 288 Pac. 152; 3 Cal. Jur., p. 843 et seq.; 42 C. J., p. 924.)

Whether, therefore, the speed of the truck was careful and prudent in view of the gyrations of appellant's car along and across the road, and the condition of the surface and width of the highway, were questions of fact for the jury, and reasonable minds might well differ thereon.

When appellant's car began to skid, respondent's truck was about 500 or 600 feet away. Respondent estimates that only 18 seconds elapsed, and contends that time and distance were too short for respondent's driver to have apprehended appellant's peril, or have acted other than he did. However, respondent's own witness Ferris, who was not driving on the highway and was not in any way concerned with the vehicles thereon, testified that he was in a field adjoining the scene of the accident, where he was directing or watching two of his employees clearing ground and hauling wood to his house, and that these employees had time to notice and tell him that an accident impended, and for him to turn and observe what was going on.

"Q. You went down there to look over the operation of whatever you were doing?

"A. I had started out to where the two men were working in the flat.

"Q. Were you walking toward the highway or away from it?

"A. No, away from it at the present time.

"Q. And then what happened?

"A. I heard some of the boys say there is going to be a wreck—

"Q. You can't tell what you heard the boys say, did you actually see these two cars come together?

"A. I did.

"Q. You can take your seat now. When you first noticed the York car, if you did notice it, describe to the jury what you saw, in your own language?

"A. After I turned around and looked towards the highway I noticed Mr. York's car, it was coming down from Wallace, I noticed the truck coming, from Kellogg, going east, I noticed Mr. York's car, I judge around five hundred

and fifty or six hundred feet, that he was going from one side of the road to the other and he did at one time turn completely around on the road, that was at the point where this curve is made in the highway, then he straightened out again and went into the truck.

"Q. When you first saw the York car how far was it from the truck?

"A. I would say five hundred and fifty or six hundred feet.

"Q. Then it straightened out you say after making this turn? . . . .

"A. Mr. York crossed the highway three times that I know of, to my knowledge, on one of these three times on this curve he turned completely around.

"Q. One of these three times did he collide with the truck?

"A. The second time he turned around he crossed the highway and went in broadside to the truck, that was on the third time.

"Q. When you first saw the truck have you any idea how fast it was going?

"A. I would judge the truck was going, that was about four hundred feet, at Terry Gulch road that crossed the highway, something near fifteen miles at that time."

Thus there was evidence from which the jury would have been justified in concluding that a reasonable man in circumstances such as respondent's servant was in could or should have observed appellant's peril, and acted in such a way as to avoid the collision. (42 C. J. 928.) True, the jury should, under proper instructions, consider the element of sudden peril (*Wheeler v. Oregon R. & N. Co.*, 16 Ida. 375, 102 Pac. 347), but such element was for the jury. Likewise there is testimony that at the time of the collision, respondent's car was on the left hand, or his wrong side of the center of the highway, contrary to the statute. (Sec. 9, art. 2, chap. 260, Sess. Laws 1927, p. 487; *Hamilton v. Carpenter*, 49 Ida. 629, 290 Pac. 724.)

Conceding that appellant was negligent in driving too fast, which resulted in his losing control of his car, nevertheless this court has laid down the law with regard to the doctrine of the "Last Clear Chance" clearly and succinctly, under which doctrine a question of fact for the jury was presented herein. In *Pilmer v. Boise Traction Co.*, 14 Ida. 327, 344, 125 Am. St. 161, 94 Pac. 432, 15 L. R. A., N. S., 254, this court said: " 'Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured; subject to this qualification, which has grown up in recent years (having been first enunciated in *Davies v. Mann*, 10 Mees. & W. (Eng.) 546) that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence,' " and we may paraphrase the statement of the court in the above case on page 347, and when we change from "street-car" to "automobile," the language is apt, pertinent and controlling in the present situation:

"The negligence of the *appellant,* if the jury should find that there was such negligence, becomes remote if it should be found that the *respondent* could have prevented the accident by having his car under proper control *or by turning further to the right* could have prevented the serious consequences of the accident. *Every automobile driver* owes a duty *of due care to every other driver,* and must *drive his car* with due care in order to avoid doing *another* injury. While we regard rapid transit as indispensable in this rushing age, we do not esteem it of greater value than life and limb, and it must be conducted with due care for the rights of others. Justice and humanity will not countenance the doctrine that *an automobile driver* may, without liability, run down and maim . . . . a human being who may have carelessly placed himself, unconsciously or otherwise, in a

position to be injured . . . . simply because he was careless or negligent in placing himself in such position.

"The question whether the negligence or want of due care on the part of the respondent was the proximate cause of the accident ought to have been submitted to the jury with all other questions of fact arising in the case, under proper instructions. The court therefore erred in granting a nonsuit." (Italics indicating paraphrasing ours.) (42 C. J. 1182; *Thompson v. Collins,* 139 Wash. 401, 247 Pac. 458; Berry, Automobiles, 6th ed., sec. 231; 5–6 Huddy, Cyc. of Automobile Law, sec. 124.)

In *Anderson v. Great Northern R. Co.,* 15 Ida. 513, 534, 99 Pac. 91, the court said:

"Where the negligence of the plaintiff precedes the negligence of the defendant, and the accident might have been prevented by the exercise of ordinary care on the part of the defendant, notwithstanding plaintiff's negligence, then, and in that case, the defendant is bound to exercise such care, and a failure to do so is actionable."

The judgment is reversed and the cause remanded for a new trial. Costs to appellant.

Lee, C. J., and Budge, Varian and Leeper, JJ., concur.