351 P.2d 230

STATE of Idaho on relation of Roscoe C. RICH, Leonard K. Floan and Wallace C. Burns, Idaho Board of Highway Directors, Plaintiff-Appellant,

v.

Virgil SWEET and Julia Sweet, his wife, and Rodney E. McCullough and Norman Sitz, Defendants-Respondents.

No. 8821.

Supreme Court of Idaho.

March 31, 1960.

Rehearing Denied May 6, 1960.

Anton Hohler, Asst. Atty. Gen., Wm. R. Padgett, Chief Legal Counsel, Idaho Dept. of Highways, Boise, for appellant.

Donart & Donart, Weiser, for respondents.

McFADDEN, Justice.

Appellant instituted this action to condemn certain land and improvements of the respondents for highway purposes. The land involved is a portion of the premises being purchased by respondents McCullough and Sitz from respondents Sweet and wife, and used by the purchasers in their operation of a livestock sales yard referred to as Weiser Sales Yard. There is approximately 5 acres in the Sales Yard, of which the land condemned amounts to approximately 0.66 acres, on which were situate improvements consisting of building used as cafe and brand office, a partially destroyed open shelter, and three holding pens. The remaining land held the main sales pavilion, loading and unloading ramps, and various pens and alleyways, parking facilities and other items used in the operation of the sales yard.

At the trial of the case before a jury, various witnesses including the respondents McCullough, Sitz and Sweet testified as to the improvements, method of operation of the yard, effect of the condemnation on the ultimate use of the remaining premises for sales yard purposes, valuation of the property before and after taking, and the methods the various witnesses used in arriving at their valuations. In addition to the testimony of the respondents, both parties introduced witnesses qualified as expert appraisers. During the course of trial the jury viewed the premises. The jury returned an unanimous verdict for $10,000 damages for property actually condemned, and $65,000 for damages to the remainder by reason of the severance of the property actually taken. Judgment with interest was entered accordingly.

Prior to commencement of the trial, appellant moved for change of venue on the ground that an impartial trial could not be had in Washington County, the motion being based on the affidavit of one of appellant's counsel, to which was annexed a copy of an article published in the Weiser American on May 18, 1959, which quoted a certain announcement of respondent Sweet. It was contended this particular article made impossible the empanelling of an impartial jury in Washington County. This motion was denied by the trial court within a week after it was filed and a week prior to commencement of the trial. After entry of judgment, appellant also filed its motion for new trial, which was denied.

Appeal was taken from the judgment and from the order denying appellant's motion for new trial. Error is assigned in the court's refusal to grant the motions for change of venue and new trial, and the court's refusal to strike certain testimony of respondents' witness McEwen, and the court's striking of certain testimony of appellant's witness McDowell.

■ This court cannot now consider the refusal of the trial court to change the venue. The order of the trial court denying the motion for change of venue was an appealable order; I.C. § 13–201. No appeal was taken from this order within the time required by said section and this court cannot now review that matter. I.C. § 13–219; Ringer v. Wilkin, 32 Idaho 330, 183 P. 986; Boise Ass'n of Credit Men v. United States Fire Ins. Co., 44 Idaho 249, 256 P. 523.

■■ Appellant moved to strike all the testimony of respondents' witness McEwen. The court's denial of this is assigned as error. Mr. McEwen in his testimony covered his qualifications as an appraiser, his familiarity with the operation of a real estate business, his experience in appraising for the Federal Land Bank of Spokane, his other background, his appraisement of the Weiser Sales Yard, his examination of

its physical features, his knowledge of the area, the location of the sales yard, and many other matters, and finally gave his opinion as to the reasonable value of this particular yard. All this testimony was admitted without objection. The motion to strike was based on a claimed improper method used by the witness in arriving at fair market value, as testified to on cross-examination. This motion was properly denied, as the motion itself was too general. When only a portion of the testimony of a witness is objectionable, it is not error to refuse to strike his entire testimony. Snook v. Olinger, 36 Idaho 423, 211 P. 559; Wyland v. Twin Falls Canal Co., 48 Idaho 789, 285 P. 676.

■ Appellant assigned error of the trial court in striking Mr. McDowell's testimony, on redirect examination by respondents' counsel as follows:

"Q. Doesn't the volume of cattle, potential volume of cattle that a yard can handle, have an effect on the number of buyers you can get? A. Yes, I would like to state in this instance that those two gentlemen, Mr. McCullough and Mr. Sitz, are extremely good operators, and they can get buyers because people have confidence in them, and they will get people to their sale because of their confidence and that does attract them.

"Mr. George Donart: I move to strike that last answer because the ability of these men has been ruled as not an element for consideration in this case, and it is not responsive to any question.

"The Court: It will be stricken."

Appellant's contention is that the matter of these two gentlemen's ability having been injected into the case, such ruling was improper. However, it must be noted the objection was not only for that reason, but also that the answer was not responsive, which clearly is the case. The question asked was answered by "yes", and the voluntary additional statement was not responsive, to any question proposed by counsel. 98 C.J.S. Witnesses § 356, p. 79; 58 Am.Jur. Witnesses § 575, p. 322. The striking of testimony by the trial court is not error where it was not proper on either of the grounds stated in the motion. 5 C.J.S. Appeal and Error § 1464(3), p. 673; cf. Valentine v. Rosenhaupt, 19 Idaho 130, 112 P. 685; Servel v. Corbett, 49 Idaho 536, 290 P. 200.

Appellant's specifications urge two grounds of error committed by the trial court in refusing to grant a new trial, (a) insufficiency of the evidence to support the verdict, that the verdict was contrary to law and beyond the scope of the evidence, and (b) excessive damages awarded under the influence of passion or prejudice. Both counsel are in agreement on the

proposition that the granting or denying of a motion for new trial is a matter of sound discretion of the trial court whose ruling will not be disturbed unless there has been an abuse of discretion. Sanchotena v. Tower Co., 74 Idaho 541, 264 P.2d 1021. This rule is applicable in condemnation actions. Colusa & H. R. Co. v. Glenn, 1914, 25 Cal.App. 634, 144 P. 993; State v. Anderson, 1932, 92 Mont. 313, 13 P.2d 228.

 We shall first dispose of appellant's contention that the trial court abused its discretion in failing to grant a new trial because of insufficiency of the evidence to justify the verdict, that it was contrary to law and beyond the scope of the evidence.

The valuation of the whole property involved was fixed at between $120,000 and $135,000 by the defendants themselves; others of their witnesses fixed the value of the property as follows: Mr. Decker, a sales yard operator at Vale, Oregon, at $125,000 to $130,000; Mr. McEwen, an appraiser, at $125,000; Mr. Doan, a sales yard operator at Caldwell, Idaho, at $125,000 to $140,000; Mr. Parker, a sales yard operator, at Nyssa, Oregon, at $130,000. All of these witnesses further testified that this property would be valueless for use as a sales yard after the condemnation; Mr. McEwen fixed damages to the remainder at $55,000; Mr. Sweet, on cross-examination,

stated he estimated the value remaining for other uses would be $25,000. Mr. Guiver, a carpenter and contractor, and foreman on the construction of the yard, estimated the cost of reconstruction of the yard at $86,954. The appellant's witness, Mr. Williams an appraiser, fixed the value before condemnation at $92,836, with severance damages at $14,214, and value of property taken at $9,000; Mr. McDowell, an appraisal witness for appellant, fixed the value at $89,836, with property taken at $10,857, and severance damage at $21,725.

From the foregoing summary of the testimony, it clearly appears that the evidence although conflicting, sufficiently supports the award not only for damages for the taking, but also for the severance damages. I.C. § 13–219. The ruling of the trial court in this regard is entitled to weight and will not be set aside in the absence of abuse of discretion. Koch v. Elkins, 71 Idaho 50, 225 P.2d 457; Hayward v. Yost, 72 Idaho 415, 242 P.2d 971.

"The trial judge sees the witnesses on the witness stand, observes the manner of their testifying, notes their apparent candor or fairness, or the want of it, hears the argument of counsel, and, in short, is in possession of many sources of information valuable in an inquiry as to whether justice has miscarried or not, and which cannot be made to appear in the record of the

case which comes to the appellate court; and, appreciating such fact, appellate courts have so frequently held, that it may be announced as settled law, that trial courts possess a discretion to be exercised wisely in the granting or refusal of new trials, and that such discretion will not be by the appellate court disturbed unless it manifestly and clearly appears to have been exercised unwisely and to have been manifestly abused." Say v. Hodgin, 20 Idaho 64, 68, 116 P. 410, 411.

From the foregoing it cannot be said that the trial court abused its discretion in denying appellant's motion for a new trial because of insufficiency of the evidence, or that the verdict was contrary to the law or beyond the scope of the evidence.

 Concerning appellant's other ground urged for new trial that the damages were awarded under the influence of passion or prejudice, we first point out that the specifications of error only claim that the damages were awarded under the influence of passion or prejudice, while the motion for new trial presented to the trial court also claimed that during the course of trial one of the defendants arose and shouted remarks interrupting the appellant's attorney, and further, that prior to and during the course of the trial certain defendants caused quoted statements to be printed concerning the merits of the case. Appellant asserts in its brief that the various remarks led to a charged atmosphere under which the jury had to deliberate. In making such assertion, appellant's counsel recognized the lack of probative force in regard to the disturbances, stating in his brief that "We recognize that this ordinarily does not constitute grounds for a new trial", inasmuch as the trial court took immediate action by reprimanding the guilty party and admonishing the jury to disregard the outburst. The record shows only two instances of objectionable conduct, first, one remark by Mr. McCullough, after which the court immediately admonished the jury to disregard the remark, and second, loud laughter at another time, which the court promptly quelled. Occurrences of that nature are not grounds for new trial where no prejudice results therefrom, as where the court rebukes the offender and instructs the jury to disregard the incident; 88 C.J.S. Trial § 52, p. 139; 53 Am.Jur. Trial § 43, p. 56. Only one newspaper article appears in the record, although appellant's counsel refers to another article. These cannot be considered here, as no prejudice can be shown by the one article as is above pointed out, and the other is not in the record. Aside from the verdict itself, these matters are the only items in the record from which appellant can possibly infer passion or prejudice on the part of the jury.

In Garrett v. Taylor, 69 Idaho 487, 489, 210 P.2d 386, 387, this court ruled

"that it must clearly appear that the amount found is so excessive as to show passion or prejudice on the part of the jury to justify the appellate court in disturbing the verdict,"

And we further said in the same case,

"The trial judge's conclusion that the verdict was not excessive is entitled to some weight in the determination of that question in this court, particularly * * * whether the verdict is tainted with passion or prejudice."

Considering the record as a whole, the instructions given by the court, the unanimity of the verdict, and not just considering isolated portions of the record, we must hold this verdict was not arrived at as a result of passion or prejudice, or that it was so excessive as to show passion or prejudice.

The judgment is affirmed.

Costs to respondents.

SMITH, KNUDSON and McQUADE, JJ., concur.

TAYLOR, Chief Justice (dissenting).

The parcel of land being condemned, .66 of an acre, equals about 15% of the larger five-acre tract owned and occupied by respondents. The entire tract was sold by Sweet and wife to Sitz and McCullough about two years prior to the commencement of this action for the sum of $75,000. The $10,000 allowed by the jury as the value of the property taken is not questioned by appellant. It is urged that the $65,000 severance damage to the property not taken is excessive and was awarded by the jury under the influence of passion or prejudice.

While the action was pending and before the trial, defendant Sweet made a public announcement which was published in the Weiser-American, a newspaper published in Weiser and of general circulation in Washington county, where the action was tried. The news item accompanying the announcement recited that the defendants McCullough and Sitz had previously announced they would be unable to continue the livestock auction business after the state had taken the property needed for the underpass-cloverleaf, unless a new site or additional land could be secured. Sweet's signed announcement, as thus published, contained the following:

"Even if the present owners are sufficiently compensated in the condemnation proceedings in Court, lack of space and lack of a suitable location might force the Sale Yard to close. * * *.

"The construction of the proposed underpass will hamper the operation of

the Weiser Livestock Commission Company to such an extent that it will be necessary to move the barn from the present location. The facilities for handling hogs, sheep and baby calves will be completely destroyed. The rest of the facilities will be so reduced in size and so inaccessible that it will be impossible to handle all livestock in enough volume to justify keeping the Sale Yard open. * * *

"Personally, I would prefer to continue to operate the Snake River Feeding as one *onc* unit in the manner that it has been operated for the past fifteen years, however, I feel that the continued operation of a Sale Yard at Weiser is necessary for the continued prosperity of the town.

"The presence of the Sale Yard in Weiser since it was first established has been a great assct to Weiser and to Washington County. The present owners have operated the sale yard with the same suyccess as previous owners. Through the years the sale yard has established a good market that is close and convenient for the farmers and stockmen in Washington County.

"The presence of such a good market here in the community assures our Washington County farmers and stockmen of better prices and bigger profits. This creates a healthier economy for Weiser. It brings many people into town each week, not only from Washington County but from as far away as Baker County, Oregon. Weiser and Washington County cannot allow this business to close up. Even though it would terminate the operation of the Snake River Feeding company at its present location, I want to do what I can to help make it possible for the Sale Yard to continue to operate in Weiser."

Sweet's offer, as published in the newspaper, was to sell to the state highway department a portion of a feeding lot owned by him adjacent to and east of the property of the commission company, and on the opposite side from the portion of the commission company property which was being taken by the state for highway purposes. How the highway department could use the land thus offered, Sweet did not state. Presumably he thought the highway department could trade the land thus acquired on the east for the right of way area it sought on the west. Such an exchange of land was proposed by the state highway department in the case of State ex rel. Rich v. Dunclick, Inc., 77 Idaho 45, 286 P.2d 1112. In that case this court held that the owner of land being condemned was entitled to be paid therefor in cash, and could not be required to accept an exchange of land.

Mr. Sweet's published statement, that "If the Highway Department wants to the way is open to take care of this problem in such a way that we can have the underpass and a Sale Yard as well", is therefore erroneous and calculated to lead the public to believe that the failure of the highway department to settle the condemnation action on a basis that would allow the people of Weiser and Washington county to enjoy both the sale yard and the underpass was due to a wilful and unreasonable attitude on the part of department officials. The entire article was intended to impress the towns people of Weiser and the farmers of Washington county of the importance of the sale yard as a local business institution; that its existence was being threatened by the condemnation proceedings; and that a great and irreparable detriment was about to be unjustly imposed upon the residents of the city and county.

At the trial, while owner Sitz was being cross-examined, counsel for the highway department made reference to another newspaper article published in the Weiser-American the day before the trial, and stated that he believed that McCullough was quoted in the paper. McCullough, from a point in the courtroom, shouted, "You're crazy." The trial judge warned McCullough against the outburst and instructed the jury to disregard it. While the plaintiff's witness McDowell was being examined, there was loud laughter from someone in the audience, directed at a question asked by plaintiff's counsel. Counsel called the court's attention to the fact that this was the "third or fourth time this has happened," and referred to it as outbursts by the defendants. Again the court warned the spectators against such conduct.

The following is a summary of the testimony of defendants' witnesses as to severance damage:

| Witness | Value placed by witness on property: | |
|---|---|---|
| | Before Condemnation | After Condemnation |
| Kermit Decker | $ 125,000 to 130,000 | Practically nothing |
| Ralph McEwen | 125,000 | Nothing |
| Homer G. Parker | 130,000 | Worthless as Sale Yard |
| Virgil Sweet | 120,000 to 130,000 | Nothing; $25,000 for sale purpose. |
| Rod McCullough | 130,000 | Nothing |
| Harold Doan | 125,000 to 140,000 | Nothing |
| Norman Sitz | 135,000 | Nothing as a Sale Yard. |

Of these witnesses, Sitz and McCullough were owner-purchasers; Sweet was an unpaid seller; and Decker, Doan and Parker were operators of other sale yards. Aside from their interest in the issue, and their willingness to place an excessive maximum value on the property before condemnation, their testimony that the remaining property was worth "nothing", or "nothing as a sale yard", after the condemnation, is quite convincing that they were prejudiced wit-

nesses. Their testimony shows their opinions as to values were entitled to little weight.

The motion for a new trial, in addition to alleging the ground of excessive damages awarded by the jury under the influence of passion or prejudice, alleges the following:

"3. That during the course of the trial and in the presence of the jury, one of the defendants, seated in the rear of the court room, arose and shouted remarks interrupting and contradicting plaintiff's attorney while addressing the Court, which said shouted remarks were calculated to and did in fact prejudice the jury against the plaintiff and plaintiff's attorney.

"4. That prior to and during the course of the trial herein, certain of the defendants caused quoted statements concerning the merits of the case herein to be printed in the local newspapers, all to the detriment and prejudice of the plaintiff."

The award of excessive severance damage was the result of prejudice generated in the community before the trial and which expressed itself at the trial in the conduct of the defendants and in the testimony of their witnesses. The trial was conducted in an atmosphere of prejudice against the plaintiffs and in favor of the defendants. It is difficult to understand how such prejudice could but influence the jury and taint its verdict. The amount of the verdict indicates that it did. If our jury system is to fulfill its role in the administration of justice, our courts must be ever alert and zealous in protecting the purity of the verdict. See, Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682; 66 C.J.S. New Trial § 52, p. 166. Under the circumstances it was an abuse of discretion to deny the motion for a new trial.

I, therefore, dissent.