404 ·P.2d 357

**Roland KUHN, Plaintiff-Respondent,**

**v.**

**Edward DELL and Monty A. Dell,**
**Defendants-Appellants,**
**and**
**Floyd D. Kuhn, Additional Party on Counter-**
**claim and Respondent.**

**No. 9427.**

Supreme Court of Idaho.

July 23, 1965.

Brauner & Fuller, Caldwell, for appellants.

Roger L. Williams, Nampa, for respondent.

SMITH, Justice.

This is an appeal from an order granting a motion for a new trial in favor of respondent (plaintiff) upon the ground, as stated in the order:

"that the pleadings and evidence * * * raised the issue of whether or not defendant had the last clear chance to avoid the accident involved in this action, and the issue having been made, it should be submitted to the jury for determination."

Respondent Roland Kuhn in his complaint alleged that on November 21, 1961, about 5:35 o'clock p. m., appellant (defendant) Monty A. Dell negligently drove and operated an automobile owned by appellant Edward Dell, with the latter's permission, on Idaho State Highway 45, in Canyon County; that the Dell automobile collided with the rear end of an automobile being carefully driven and operated by respondent Floyd D. Kuhn; that thereby the Kuhn vehicle sustained substantial damage for which respondent Roland Kuhn prayed judgment against appellants.

Appellants in their answer admitted that Monty A. Dell was driving the vehicle with Edward Dell's consent, and admitted the collision, but denied that they were negligent. They then counterclaimed seeking judgment against respondents, for damages sustained to the Dell automobile, alleging that the damages were caused by the negligence of the additional party, respondent Floyd D. Kuhn, who was operating the Kuhn vehicle with respondent Roland Kuhn's consent. Respondents by their reply and counterclaim denied negligence on their part.

At the conclusion of a jury trial the jury returned its verdict finding "for neither plaintiff or defendant," and the trial court entered judgment accordingly.

Thereupon respondents moved for a new trial, asserting that the trial court erred in failing to instruct the jury concerning the doctrine of last clear chance. Upon entry

of the order granting the motion for a new trial on that ground, appellants perfected this appeal.

Appellants assign error committed by the trial court in granting the motion for a new trial, asserting that the trial court's refusal to give a jury instruction on last clear chance constituted a correct application of the law to the evidence. The issue thus raised is whether appellant Monty A. Dell had a last clear chance to avoid the accident under the evidence.

■ Where the trial court in granting a new trial expressly states the ground upon which the new trial was granted, the appellate court will determine on the appeal the issue of whether the particular ground justified the granting of the motion. Sanchotena v. Tower Co., 74 Idaho 541, 264 P. 2d 1021 (1953); Idaho Gold Dredging Corp. v. Boise Payette Lumber Co., 52 Idaho 766, 22 P.2d 147 (1933).

■ In granting or refusing a motion for new trial, the trial court possesses wide discretion; the appellate court will not reverse the trial court unless it clearly appears that the court abused such discretion. Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146 (1961); State ex rel. Rich v. Sweet, 82 Idaho 191, 351 P.2d 230 (1960); Hall v. Bannock County, 81 Idaho 256, 340 P.2d 855 (1959); Stearns v. Graves, 62 Idaho 312, 111 P.2d

882 (1941); Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430 (1949); Applebaum v. Stanton, 47 Idaho 395, 276 P. 47 (1929).

■ In order to justify the giving of an instruction on the last clear chance doctrine, there must be substantial evidence to support the application of the doctrine. Schwandt v. Bates, 88 Idaho 131, 397 P.2d 244 (1964); Allen v. Idaho Power Company, 84 Idaho 309, 372 P.2d 80 (1962); Hale v. Gunter, 82 Idaho 534, 356 P.2d 223 (1960); Ralph v. Union Pacific Railroad Company, 82 Idaho 240, 351 P.2d 464 (1960); Laidlaw v. Barker, 78 Idaho 67, 297 P.2d 287 (1936).

The evidence to be considered in disposing of the issue relating to the last clear chance doctrine, shows that on November 21, 1961, about 5:30 o'clock p. m., respondent was driving his father's automobile northerly on a straight portion of Idaho State Highway 45 in Canyon County. After he had come over a rise or "hill" in the highway and was traveling down the slope, the automobile ran out of gasoline and the engine stopped running, whereupon respondent coasted the vehicle about one-fourth of a mile to a halt at his right-hand side of the highway, about one-half mile from the top of the rise or "hill." When the car stopped its two right wheels were off the paved highway but the remaining portion of the car, measuring six feet six inches in width, remained on the traveled

portion of the highway. The highway was newly constructed. The shoulder bordering the highway was accessible and of sufficient width to park a car thereon. Respondent Floyd D. Kuhn testified that the shoulder of the highway appeared to be moist and unstable. Appellant Monty A. Dell testified that the shoulder was constructed of "basement dirt," i. e., gravel. Respondent attempted to start the car without avail. He testified that inasmuch as the sun had set his car lights were turned on and that he left them lighted; he then started to get out of the car, at which time it was struck in the rear by an automobile driven by appellant Monty A. Dell.

Appellant Monty A. Dell testified that he was driving his father's automobile, traveling north toward Nampa on Idaho State Highway 45 just prior to the collision. The car was in good condition, including its brakes. He had the headlights of the vehicle turned to low beam. He came over a rise or "hill" in the highway, and the highway then gradually sloped downward. As he started down the slope he noticed that the speedometer on the car showed he was traveling at the speed of 50 miles an hour, within the posted speed limit. He met two cars with bright lights just as he commenced traveling down the slope. He was driving in his own right-hand traffic lane. He then testified:

"Q. And could you tell us what happened as you were going along here on this road going towards Nampa?

"A. Well, just as I was going on, I noticed a car [not involved in the collision] turning on from Greenhurst Road turning on the highway and suddenly I saw a pair of headlights or tail lights reflecting my lights reflecting off his * * * and I hit him [Kuhn].

"Q. * * * now the car that you say you saw turning onto Greenhurst Road, that is not the automobile you hit?

"A. No, it isn't.

"Q. And that automobile was some distance away?

"A. It was probably a quarter of a mile away.

"Q. * * * where were you observing as you came down the hill?

"A. I was looking straight ahead of me.

"Q. And was that for some distance that you had been coming down the hill and able to see below you?

"A. The hill extends three-quarters to a mile. It slopes all the way down that far.

"Q. * * * what did you do when you saw those pair of tail lights in front of you?

"A. Well, I tried to put on my brakes or to swerve but I hit him before I could do anything.

"Q. And just exactly, could you tell us the condition of those tail lights at the time that you saw them?

"A. It looked just like reflected glass on the side of the road or on the signs along the side of the road. It looked just like it was reflecting back. It didn't look like they were on.

\* \* \* \* \* \* \*

"Q. Now was there any obstructions to your vision as you proceeded down this slope toward Nampa?
"A. No, there wasn't."

He further testified that when proceeding down the slope he first saw the Kuhn automobile when it was about 50 feet distant in front of him on the highway. It was then that he "tried to put on my brakes or to swerve but I hit him before I could do anything." The lights of the Kuhn car were not on but, according to Dell, its tail lights "looked just exactly like a reflection." The right front end of the Dell car collided with the rear of the Kuhn car.

The deputy sheriff called to the scene of the collision, testified that about 5:35 o'clock p. m., on November 21, 1961, he received a call concerning the collision and proceeded immediately to the scene of the accident. When he left the sheriff's office he did not have his car lights turned on. He testified concerning the necessity of having lights turned on:

"Q. And when you left ˙ \* \* \* the Sheriff's Office of Canyon County, did you have your lights on?

"A. No.

\* \* \* \* \* \* \*

"MR. WILLIAMS: Was visibility possible without lights at that time?
"MR. LYNSKEY: Yes."

The deputy sheriff stated that at the point of the impact the highway was 41 feet wide from pavement edge to pavement edge; that a center line was painted down the middle of the paved portion of the highway; that the left rear tire of the Kuhn vehicle at the time of impact was located on the pavement six feet six inches from the pavement edge, leaving fourteen feet of clearance between the Kuhn vehicle and the center of the highway, with twenty feet six inches of the highway on the opposite side of the center line. He did not recall whether respondent's lights were on at the time of the accident.

Appellant Edward Dell, owner of one of the vehicles, arrived at the scene of the collision about half an hour after it occurred. He testified that he noticed no lights on the Kuhn automobile at the time.

The issue, under the circumstances shown by the evidence, as it relates to the last

clear chance doctrine, is whether appellant Monty A. Dell, upon becoming aware of the peril of respondent Floyd D. Kuhn, had sufficient opportunity to avert the collision and consequent damage to the Kuhn car.

The doctrine of last clear chance of necessity admits an avenue of escape from the consequences of the contributory negligence of the proponent of the doctrine. Rippetoe v. Feely, 20 Idaho 619, 119 P. 465 (1911); Ralph v. Union Pacific Railroad Company, 82 Idaho 240, 351 P.2d 464 (1960).

In Short v. Boise Valley Traction Co., 38 Idaho 593, 599, 225 P. 398, 399 (1924), the Court quoting from Locke v. Puget Sound International Ry. & Power Co., 100 Wash. 432, 171 P. 242, L.R.A.1918D, 1119 (1918), stated:

" 'Much of the confusion attending the doctrine of the last clear chance has come from a seeming belief on the part of many judges and text-writers that it is in itself a principle of law and subject to arbitrary definition, whereas it is no more than a judicial exception to established principles, resting in fact, and not in law. The chance to avoid an injury is a relative question, to be resolved solely by reference to the facts of each particular case. If the one party knows of the peril of the other, although brought about by the other's negligence, in time to avoid injuring him, he is at once put to a degree of care commensurate with the present situation of the parties.' [Citation]."

Additionally this Court in Cournyer v. Follett, 85 Idaho 119, 122, 376 P.2d 707, 708, 709 (1962), held:

" 'That doctrine implies thought, appreciation, mental direction and lapse of sufficient time effectually so to act as to save another from injury to which he has negligently exposed himself. It is not applicable where the emergency is so sudden that there is no time to avert the accident.' "

In Lallatin v. Terry, 81 Idaho 238, 250, 340 P.2d 112, 120 (1959), the rule is stated:

" * * * Juries should not be asked or allowed to speculate upon possibilities of avoiding an injury under the circumstances which would be beyond human experience, and on the side of the miraculous. Courts sometimes overlook the fact that the doctrine [of the last clear chance] not only requires that the chance must be the 'last' chance, but it must also be a 'clear' chance."

See also Schwandt v. Bates, 88 Idaho 131, 397 P.2d 244 (1964); Laidlaw v. Barker, 78 Idaho 67, 297 P.2d 287 (1956); 38 Am. Jur., Negligence, § 219; 65 C.J.S. Negligence § 137e.

In Hale v. Gunter, 82 Idaho 534, 538, 356 P.2d 223, 225 (1960), this Court upon considering time factors similar to those shown by the evidence in the case at bar, said:

" * * * Actually, allowing 50 feet for reaction time adding the 66 feet of skid marks before the impact, plaintiff's car was 116 feet south of the point of collision at the time she first became aware of defendant's turning. The pickup at that moment was also some short distance south of the point of impact. At 50 miles per hour, Mrs. Hale had approximately 1.59 seconds in which to avoid the collision. Obviously she could not have avoided the collision by turning to the left, and time did not permit her to slow down sufficiently to avoid the pickup by turning to the right. The doctrine of the last clear chance has no application in such an emergency. [Citations]."

In Laidlaw v. Barker, supra, the defendant Barker was driving his automobile at the rate of 55 miles per hour, when he first saw the Laidlaw boy about 50 feet distant, at approximately the center line of the highway. The boy was running across the highway into Barker's lane of traffic. Barker applied his brakes but nevertheless struck the boy who had continued crossing the highway to a point in front of Barker's car. Again this Court in considering the time factors said:

" * * * It [the last clear chance doctrine] is not applicable where the emergency is so sudden that there is no time to avert the accident. In the case here, the act which created the peril occurred at practically the same time as the accident in that only six-tenths to seven-tenths of a second, mathematically calculated, elapsed from the time the Laidlaw boy's peril became apparent to appellant Barker before the accident; under the circumstances appellant did not have a last clear chance to avoid the accident. The last clear chance must be a clear one. [Citations]." 78 Idaho at 74, 297 P.2d at 291.

Hale v. Gunter, supra, points out that "at 50 miles per hour a driver with normal reaction would apply the brakes 50 feet after becoming aware of danger ahead." In the case at bar appellant Monty A. Dell, traveling at the rate of 50 to 55 miles an hour with normal reaction, would not have been able to apply the brakes until, in approximately seven-tenths of a second, he had traveled the 50 feet to the Kuhn car.

To make the doctrine of last clear chance applicable in the case at bar would require evidence to support a finding that appellant Monty A. Dell observed the posi-

tion of the respondent Roland Kuhn's car in sufficient time to enable Dell by exercise of due care to avoid the collision. Absent such evidence an instruction on last clear chance should not have been given.

█ It is not sufficient that the evidence would support a finding that appellant Dell in the exercise of due care should have observed the Kuhn car sooner than he did because, if such failure on Dell's part was a proximate cause, or contributing proximate cause, of the collision, he would be subjected to liability by application of the law of negligence for his failure so to observe. Under such state of facts any attempted application of the doctrine of last clear chance on the ground that appellant Dell should have sooner observed the Kuhn car, would be repetitious of the law of negligence under the guise of last clear chance.

Here the record does not show or tend to show that respondent Monty A. Dell discovered the Kuhn car in time to have avoided the collision.

█ It is reversible error to instruct the jury on the doctrine of last clear chance where there is no substantial evidence to support the doctrine. Graham v. Milsap, supra; Cournyer v. Follett, 85 Idaho 119, 376 P.2d 707 (1962); Hale v. Gunter, 82 Idaho 534, 356 P.2d 223 (1960); Ralph v. Union Pacific Railroad Company, 82 Idaho 240, 351 P.2d 464 (1960); Laidlaw v. Barker, 78 Idaho 67, 297 P.2d 287 (1956).

The order of the trial court granting respondents' motion for a new trial is reversed, and the cause is remanded with instructions to reinstate the jury's verdict.

Costs to appellants.

McQUADE, C. J., concurs.

TAYLOR, Justice.

I concur in the opinion by SMITH, J.

On the basis of the testimony of Floyd Kuhn, alone, the stopping and permitting of the Kuhn car to stand upon the traveled portion of the highway was in violation of I.C. § 49–755. That section provides:

"(a) Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of 200 feet in each direction upon such highway.

"(b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or main-traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

During the course of the last quarter of a mile of its travel, while it was coasting downhill, it could have been guided off the traveled portion of the highway and onto the shoulder, out of the way of oncoming traffic. Even after it had stopped, since it was facing downhill, its driver presumably could have pushed it off the traveled portion of the highway. The shoulder was shown to be one sloping gently outward a distance of fifteen feet. The fact that it may have been wet, could not justify the driver in leaving the car on the traveled area where it constituted a menace to other drivers lawfully using the highway. The record conclusively shows that it was not disabled to such extent that it was "impossible to avoid stopping" and leaving it upon the traveled portion of the highway. The statute contemplates that where the choice is between the necessity of pulling a car back on the highway with a wrecker, or leaving it in a position such as to endanger not only the life of its driver, but others lawfully using the highway, the driver must choose the way of safety. The use of the word "impossible" in the statute neg-atives the idea that a driver may consult his own convenience in deciding whether he will stop, or move his disabled car off the traveled portion of the highway.

Young Kuhn's negligence in leaving the car on the highway did not result in a static or passive situation. Since the car could have been moved off the roadway, his negligence in not so moving it and in permitting it to stand on the traveled portion was continuing and active negligence and remained of such character up to the time of the collision.

By the Kuhn complaint, Dell, the driver of the other car, was charged with negligence in failing to see the Kuhn car in time, and with failing to so operate the Dell car as to avoid the collision. The issues of negligence on the part of Dell and the contributory negligence of Kuhn were submitted to the jury and were determined by its verdict against Kuhn and in favor of Dell. To require the trial court to instruct the jury that it should also determine whether or not the driver Bell was negligent in failing to see the Kuhn car in time to avoid the collision, and, if so, to hold him solely responsible for the accident, without any evidence that he actually saw the Kuhn car and became aware of its presence on the traveled portion of the highway in time to avoid the collision, is equivalent to instructing the jurors that they must find for the plaintiff regardless of his contributory neg-

ligence if they find ordinary negligence on the part of defendant. In this case the hour was late afternoon, dusk; drivers on the highway were using their lights; the reflection of the lights from the city of Nampa could be seen from the hilltop; there had been a light rain; there was at the time a drizzle and the atmosphere was misty; and the Dell car was being operated in a lawful manner and within the posted speed limit. To apply the doctrine of last clear chance against Dell under such circumstances is equivalent to assuming that he did see the Kuhn car in time to have avoided it. In my opinion the failure to give an instruction on the last clear chance in favor of the plaintiff was not error.

McFADDEN, Justice (dissenting).

It is necessary to point out that by their answer, the appellants, Edward and Monty A. Dell, not only denied negligence on the part of Monty A. Dell, the driver of the Dell vehicle, but further interposed as an affirmative defense to the complaint, that:

"* * * Floyd E. Kuhn so negligently and carelessly operated plaintiff's vehicle that there was a collision between plaintiff's vehicle and defendant Edward Dell's vehicle; that the damages, if any, sustained by the said Roland Kuhn were contributed to and proximately caused by the negligence and carelessness of the said Floyd E. Kuhn, and that such negligence and carelessness may be imputed by law to the said Roland Kuhn".

Thus the issue of contributory negligence on the part of respondent Floyd E. Kuhn was presented by the pleadings.

The majority opinion holds that the doctrine of last clear chance is not applicable unless the defendant actually has observed the plaintiff's perilous situation in sufficient time to act so as to avoid an accident. Furthermore, such majority opinion states:

"To make the doctrine of last clear chance applicable in the case at bar would require evidence to support a finding that appellant Monty A. Dell observed the position of the respondent Roland Kuhn's car in sufficient time to enable Dell by evidence of due care to avoid the collision. Absent such evidence an instruction on last clear chance should not have been given.

"It is not sufficient that the evidence would support a finding that appellant Dell in the exercise of due care should have observed the Kuhn car sooner than he did because, if such failure on Dell's part was a proximate cause, or contributing proximate cause, of the collision, he would be subjected to liability by application of the law of negligence for his failure so to observe. Under such state of facts any attempted application of the doctrine of last clear chance on

the ground that appellant Dell should have sooner observed the Kuhn car, would be repetitious of the law of negligence under the guise of last clear chance."

The purpose of the doctrine of last clear chance is to allow a plaintiff in a proper case to recover for his injuries despite the fact that he has negligently exposed himself to the danger.

The Supreme Court of Washington in the leading case of Mosso v. E. H. Stanton Co., 75 Wash. 220, 134 P. 941, L.R.A.1916A, 943 (1913), dealing with the last clear chance doctrine established a formula for determining the applicability of the doctrine, as follows:

"The objection is directed to the parts which we have italicized. The courts are wide of an agreement as to the extent of the last chance doctrine as applied to the operation of trains, street cars, automobiles, and the like. But what we conceive to be the sounder view is this: Assuming that a traveler has negligently placed himself in a dangerous situation upon the highway, then, as we have seen, whenever the person in control of such agency actually sees the traveler's situation and should appreciate his danger, the last chance rule applies without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury.

"A second situation to which the rule applies is this: Where the person in control of such agency by keeping a reasonably careful lookout, commensurate with the dangerous character of the agency and the nature of the locality, could have discovered and appreciated the traveler's perilous situation in time by the exercise of reasonable care to avoid injuring him, and injury results from the failure to keep such lookout and to exercise such care, then the last chance rule applies, regardless of the traveler's prior negligence, whenever that negligence has terminated or culminated in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him. This last phase of the rule applies whenever injury results from new negligence or from a continuance of the operator's negligence after that of the traveler has so ceased or culminated.

"The application of the rule to the first situation as above indicated needs no support outside of simple considerations of humanity. Any other view would condone willful or wanton injury. The application of the rule to the second situation indicated has been sustained by this court; and we think soundly, in a case of injury to an auto-

mobile stalled through its owner's negligence on a railway crossing. Nicol v. Ore.–Wash. R. & Nav. Co., 71 Wash. 409, 128 Pac. 628 [43 L.R.A.,N.S., 174]. Another court has upheld it in case of injury to a portable steam engine similarly situated. Bullock v. Wilmington & Weldon R. Co., 105 N.C. 180, 10 S.E. 988. The law will hardly hold more cheap or view with less solicitude the safety or life of a human being. * * *"

The second part of the Washington formula is strictly limited to those situations where the plaintiff's negligence has culminated or terminated in a position of peril from which he could not, by the exercise of reasonable care, extricate himself. Everest v. Riecken, 30 Wash.2d 683, 193 P.2d 353 (Wash.1948); Thompson v. Porter, 21 Wash.2d 449, 151 P.2d 433 (Wash.1944).

The Restatement of the Law of Torts recognizes the application of the last clear chance doctrine where the defendant is under a duty to exercise vigilance though he did not know of the plaintiff's perilous situation. Restatement of Law of Torts § 479 provides:

"A plaintiff who has negligently subjected himself to a risk of harm from the defendants subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

(b) the defendant

(i) knows of the plaintiff's situation and realizes the helpless peril involved therein; or

(ii) knows of the plaintiff's situation and has reason to realize the peril involved therein; or

(iii) would have discovered the plaintiff's situation and thus had reason to realize the plaintiff's helpless peril had he exercised the vigilance which it was his duty to the plaintiff to exercise, and

(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

In discussing the applicability of the doctrine of last clear chance, the annotators of A.L.R. (92 A.L.R. 47; 119 A.L.R. 1041; 171 A.L.R. 365), have divided the factual situation of decided cases into four categories:

"First category: danger actually discovered by defendant; injured person physically unable to escape.

Second category: danger actually discovered by defendant; injured person physically able to escape.

Third category: danger not actually discovered by defendant but ought to have been; injured person physically unable to escape.

Fourth category: danger not actually discovered by defendant but ought to have been; injured person physically able to escape."

Application of the doctrine of the last clear chance cases falling within the third category necessarily require that there be upon the defendant a duty to observe; a breach of that duty; and an injury to a plaintiff whose antecedent negligence has left him in a state of peril from which he cannot extricate himself.

The case at hand falls within the third category, as the record indicates that the respondent Roland A. Kuhn was unable to move his car off the road because it was out of gas and would not start. In Drury v. Palmer, 84 Idaho 558, 375 P.2d 125, this court stated:

"* * * It is not only the duty of the operator to look, but it is his duty to see and be cognizant of that which is plainly visible or obviously apparent, and a failure on his part in this regard, without proper justification or reason, makes him chargeable for failure to see what he should have seen had he been in the exercise of reasonable care."

In discussing the cases, which if taken at face value, would deny application of the doctrine of last clear chance, the A.L.R. Annotation at 92 A.L.R. 111 said:

"While the cases are numerous that declare in sweeping terms that the doctrine never applies unless the danger was actually discovered, and that failure to discover it, although there was a duty to discover it, is not sufficient, [,] there are comparatively few of the great number of cases examined for the purposes of the present comment that on their facts have deliberately, and with full appreciation of the distinction between a case of concurrent and one of non-current negligence on the part of the injured person, declined to apply the doctrine to the latter situation because the danger was not actually discovered, if there was a duty to have discovered it the nonperformance of which was negligence related to the accident as a proximate cause. When such cases are examined with reference to their facts, it will generally be found that one or more of the conditions embraced by the hypothesis of this category was lacking."

An examination of the Idaho cases on this subject discloses that the last clear chance doctrine has been held inapplicable in situations where the defendant was justified in assuming that the plaintiff's deceased would move out of the danger zone (Neil v. Idaho & Washington N.R.R., 22

Idaho 74, 125 P. 331); where the plaintiff was in complete control of the machinery and was held to assume the risk (Rippetoe v. Freely, 20 Idaho 619, 119 P. 465); and also where there was *active* negligence on the part of the plaintiff creating an emergency situation not realized by the defendant until too late to avoid the accident. Cournyer v. Follett, 85 Idaho 119, 376 P.2d 707; Hale v. Gunter, 82 Idaho 534, 356 P.2d 223; Laidlaw v. Barker, 78 Idaho 67, 297 P.2d 287; Graham v, Milsap, 77 Idaho 179, 290 P.2d 744; McIntire v. Oregon Short Line R. R. Co., 56 Idaho 392, 55 P.2d 148.

On the other hand, this court has applied the doctrine of the last clear chance to situations in which the plaintiff's active contributory negligence, while continuing up to the time of the accident, did not create an emergency situation, for the defendant was aware of the circumstances. Evans v. Davidson, 57 Idaho 548, 67 P.2d 83; Bryant v. Hill, 45 Idaho 662, 264 P. 869; Geist v. Moore, 58 Idaho 149, 70 P.2d 403; Short v. Boise Valley Traction Co., 38 Idaho 593, 225 P. 398; Denbeigh v. Oregon-Washington Etc. Co., 23 Idaho 663, 132 P. 112; Anderson v. Great Northern Ry. Co., 15 Idaho 513, 99 P. 91; Pilmer v. Boise Traction Co., Ltd., 14 Idaho 327, 94 P. 432, 15 L.R.A.,N.S., 254. Also where the plaintiff's negligence has placed him in a position of peril, and the defendant saw or should have seen the plaintiff in his *perilous situation*: Jack v. Fillmore, 85 Idaho 36, 375 P.2d 321; Stearns v. Graves, 62 Idaho 312, 111 P.2d 882; Asumendi v. Ferguson, 57 Idaho 450, 65 P.2d 713; Branson v. Northern Pacific Ry. Co., 55 Idaho 220, 41 P.2d 629; York v. Alho, 52 Idaho 528, 16 P.2d 980; See also: Hooker v. Schuler, 45 Idaho 83, 260 P. 1027, and Durrington v. Crooker, 78 Idaho 539, 307 P.2d 227.

In the Durrington case, the defendant and cross-complainant's requested instruction on the last clear chance doctrine was given. After an adverse judgment on his cross-complaint, defendant appealed contending the trial court erred in not granting his motion for non-suit and for a new trial, contending the evidence clearly indicated the plaintiff had the last clear chance to avoid the accident. In answer to this contention the court stated:

"Assuming that the doctrine of last clear chance was available to defendant, see annotation, 32 A.L.R.2d 543, and that it was applicable to the facts in this case, the court, in the application of that doctrine, could not take the case from the jury unless the proof was so conclusive that all reasonable minds would agree that the plaintiffs *became aware, or should have became aware*, of defendant's position of peril in time to have avoided injuring him,

by the exercise of ordinary care. *If the proof leaves the issue of last clear chance in doubt, or if reasonable minds might from the evidence reach different conclusions thereon, then the issue of last clear chance must be submitted to the jury.*" (Emphasis added.)

The majority opinion quoted from Short v. Boise Valley Traction Co., supra, Cournyer v. Follett, supra, Lallatin v. Terry, supra, and Hale v. Gunter, supra, in support of the proposition that the last clear chance doctrine is not applicable unless the defendant actually saw the plaintiff in a state of peril. A careful examination of these cases discloses that the injured parties were actively contributorily negligent up to the time of the accident, and in view of the concurring negligence the defendant could not have had the "last clear chance" to have avoided the accident.

In Jack v. Fillmore, supra, plaintiff Jack was struck by a car driven by defendant Fillmore, while attempting to cross a road on foot. The road was straight and 46 feet wide at the place of impact and Mrs. Jack had walked 10 feet onto the paved road when she was struck. This court said:

"Under the doctrine of last clear chance it was the duty of the driver, seeing Mrs. Jack's danger, *or being so situated that she should have seen it,* to do all in her power to avoid injuring Mrs. Jack." (Emphasis added).

In Branson v. Northern Pacific Ry., supra, the deceased was driving a truck pulling a hay rake along a private road which crossed defendant's tracks at a private crossing. When deceased attempted to cross the tracks one of the wheels of the hay rake caught on a motor-cart which the defendant's employees had left at the crossing. He was struck by one of the defendant's locomotives when he stopped to examine the situation. There this court said:

"Under the doctrine of last clear chance it was the duty of the engineer, seeing Peterson's danger, *or being so situated that he should have seen it, to* do all in his power to avoid injuring or killing him. Whether he should have applied the brakes sooner than he did in order to reduce the speed of the train and give Peterson more time than was given him in which to escape, and whether he should have sounded an alarm in order to warn him, were questions for the jury." (Emphasis added).

In York v. Alho, supra, plaintiff-appellant lost control of his car on an icy road and travelled in an uncontrolled manner for about 150 to 200 feet, before colliding with a truck driven by defendant's servant. The record indicated that when appellant's car began its skid defendant's truck was about

500 to 600 feet away. There this court said:

"Thus there was evidence from which the jury would have been justified in concluding that a reasonable man in circumstances such as respondent's servant was in, could *or should have observed appellant's peril*, and acted in such a way as to avoid the collision." (Emphasis added).

The cases in which this court has spoken in terms of actual knowledge by the defendant of the plaintiff's peril being a prerequisite to the application of the doctrine, factually are not inconsistent with the cases decided by this court which speak in terms of the defendant's awareness of the plaintiff's peril or duty to be aware of such peril. Those cases which speak in terms of defendant's actual knowledge, did not involve a factual situation where the plaintiff was in a position of peril because of his passive negligence, as in the case at hand.

The majority opinion accepts Dell's testimony that he did not have sufficient time in which to avoid colliding with the Kuhn car. A similar contention was made in the case of Stearns v. Graves, 62 Idaho 312, 111 P.2d 882, where this court stated at page 323 of 62 Idaho, at page 886 of 111 P.2d:

"It will be conceded if a motorist sees a pedestrian walking toward the path of his automobile, unaware of his danger, it is the duty of such motorist to sound a warning. But suppose a motorist does not see the pedestrian, hence, gives no warning, when, by the exercise of reasonable and ordinary care he would and could have seen him and given warning of his approach, and the pedestrian is injured, may the motorist use his own carelessness and want of reasonable and ordinary care as a shield to escape liability? To hold he cannot would tend to promote the security of life and limb. But to hold he can would tend to defeat, if not largely destroy, the underlying purpose of the last clear chance doctrine. For these reasons we conclude there is no merit in appellants' last above-stated contentions."

It is my conclusion that as concerns the doctrine of the last clear chance, this court has committed itself to the application of the doctrine not only to those cases where the defendant *actually* was aware of the plaintiff's peril, but also to the cases where the exercise of ordinary care and caution, the defendant, under a duty to observe, in should have seen or been aware of the plaintiff's peril.

The purpose of the humanitarian doctrine of the last clear chance is to allow a plaintiff in a proper case to recover for his injuries despite the fact that he has negligently exposed himself to the danger caus-

ing his injuries. In such a case to allow any recovery, the jury would first have to find negligence on the part of the defendant, otherwise there would be no recovery. If such jury did find negligence on the part of the defendant and no contributory negligence on the part of the plaintiff, the jury would have to find for the plaintiff. Only when the jury finds negligence on the part of the defendant and also contributory negligence on the part of the plaintiff does the doctrine become applicable.

The majority opinion reasons that the doctrine can only be applied where the negligent defendant actually saw or was aware of the plaintiff's peril; that the doctrine cannot be applied to a situation where the defendant while not actually seeing or being aware of the plaintiff's peril should have seen or been aware of it, because under such latter situation, the negligence causing the injury would be the failure to see or observe the plaintiff's peril. While that may be true, where the issue of contributory negligence has been interjected by the defendant's answer, which if supported by the facts no recovery could be had, it takes from the jury the opportunity to pass on the issue of the plaintiff's contributory negligence.

The function of a jury is to resolve issues of fact. An instruction on this rather anomalous doctrine gives a criterion to the jury to assist in the evaluation of the evidence presented and the application of other instructions dealing with negligence, contributory negligence, and proximate cause.

The plaintiffs' motion for new trial was based on the grounds of insufficiency of the evidence to sustain the verdict, and failure to instruct the jury concerning the doctrine of last clear chance. The trial court in ruling on this motion stated in its order:

"The Court does hereby Order that the plaintiff be and he is hereby granted a new trial in the above-entitled action, and the verdict of the jury is hereby set aside and held for naught; that this motion is granted upon the ground that the pleadings and evidence clearly raised the issue of whether or not defendant had the last clear chance to avoid the accident involved in this action, and the issue having been made, it should be submitted to the jury for determination."

Briefly reiterating the facts before the court at that time, the Kuhn car stopped approximately a quarter of a mile below the top of a slope in the highway, with its two right wheels off the paved portion of the roadway, and about six and a half feet onto the paved roadway. The Dell car

struck the rear of the Kuhn car about 5:30 P.M., November 21, 1961. A conflict appears whether lights· were necessary or not, and also whether the lights of the Kuhn vehicle were on. The Kuhn vehicle had ran out of gasoline and wouldn't start. Floyd Kuhn, the driver; rather than getting completely off the travelled portion of the highway testified that the shoulder of the highway looked soft. At the place where the accident occurred, the paved roadway was 41 feet in width with a center line down the middle, leaving fourteen feet of the right hand lane open to pass, and 34 feet of the whole highway. Appellant Monty A. Dell testified that he was looking straight ahead when he came over the crest of the hill behind the Kuhn vehicle, and that he did not see the Kuhn car until it was too late to avoid the accident.

In ruling on the motion the trial court had to resolve the problem whether the verdict signed by only nine of the jurors was properly rendered. The order granting the new trial reflects that the court not only evaluated the law applicable, but also evaluated the record before it, which presented many factual issues to be resolved. To arrive at the conclusion that the new trial should be granted necessitated an evaluation of the whole record in order to determine whether factual issues were in the record which made applicable the doctrine of last clear chance, and the trial court made this determination.

The granting or denial of a new trial will be reviewed only for manifest error or abuse of discretion. Walsh v. Winston Bros. Co., 18 Idaho 768, 111 P. 1090; Say v. Hodgin, 20 Idaho 64, 116 P. 410; Baillie v. City of Wallace, 22 Idaho 702, 127 P. 908; McAllister v. Bardsley, 37 Idaho 220, 215 P. 852; Stone v. Matthies, 49 Idaho 277, 287 P. 951; Stearns v. Graves, 62 Idaho 312, 111 P.2d 882; Poston v. Hollar, 64 Idaho 322, 132 P.2d 142; Smith v. Big Lost River Irrigation District, 83 Idaho 374, 364 P.2d 146.

In MacDonald v. Ogan, 61 Idaho 553, 556, 104 P.2d 1106, 1107, this court stated:

"It should be remembered that, in passing upon a motion for a new trial, the appellate court applies a different rule to the consideration of an order *granting a new trial* from what it applies to the *denial of a new trial*. This difference is predicated on the grounds that, where a new trial is granted, both parties are put back in the status in which they found themselves on the original trial; and each party has his chance to present the case anew to the court and jury. Whereas, an order denying a motion for a new trial terminates the case and denies the

losing party any chance of resubmitting his case or having it again heard by the court and jury."

One further facet of this case merits scrutiny by this court. The trial court gave an instruction on the "sudden emergency" doctrine. In giving such an instruction the trial court must have believed there were facts in the record justifying such an instruction. However, on the motion for new trial, he found facts in the record which in his discretion were sufficient to justify the giving of an instruction of the doctrine of last clear chance, after he had first denied the plaintiff's request for such an instruction. This, in my mind, indicates that the trial court had misgivings as to the correctness of his earlier determination of the applicability of the "sudden emergency" doctrine. Under any view of the "last clear chance" doctrine, if the facts would justify giving of that instruction, certainly that would eliminate from consideration the application of the doctrine of sudden emergency.

It is my conclusion that the trial court was doing substantial justice in granting the motion for new trial, and no abuse of its discretion appearing, the trial court's order should be sustained.

KNUDSON, J., concurs with this dissenting opinion.